1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| NAOKO ITO, et al., | ) | 06 CV 01135 AWI DLB |
| | ) | |
| Plaintiffs, | ) | MEMORANDUM OPINION |
| v. | ) | AND ORDER GRANTING IN |
| | ) | PART AND DENYING IN |
| BRIGHTON/SHAW, INC., et al., | ) | PART CROSS-DEFENDANT |
| | ) | CRAIG DAVIS' MOTION FOR |
| Defendants. | ) | SUMMARY JUDGMENT |
| | ) | |
| | ) | (Document # 142) |
| AND RELATED CROSS-CLAIMS | ) | |
| | ) | |

   This case comes before the Court on a motion for summary judgment or, in the alternative, partial summary judgment brought by Defendant and Cross-Defendant Craig Davis ("Davis").  Davis seeks summary judgment in his favor on a cross-claim brought against him by Defendant and Cross-Claimant Robert Carson ("Carson") on December 3, 2007.  For the reasons that follow, the motion for summary judgment will be granted in part and denied in part.

## FACTUAL BACKGROUND

   In May 1994, the Brighton Hills Limited Partnership ("Brighton Hills") was formed, with Carson as General Partner, to own and invest in real property located in the County of Fresno,

California.  Between 2001 and 2002, Carson became engaged in a dispute with the limited partners in Brighton Hills over his actions as General Partner.  Carson retained Davis as an attorney to represent him in the dispute and also to assist him with a transfer of property in Brighton Hills.  After a series of negotiations, Carson entered into a Mutual Release, Assignment & Indemnity Agreement with Brighton Hills in or around May 2002.

In or around March 2002, a few months before the agreement was signed, Davis assisted Carson with the purported assignments of twelve disputed partnership units in Brighton Hills.  In 1996, Japanese investors Fumitoshi Ito ("Ito") and Shizuo Miyoshi ("Miyoshi") had each transferred $1,000,000 to Carson to be put toward a group referred to as "IQ Properties," which was to provide them with an interest equal to 12 partnership units in Brighton Hills.  However, on March 21, 2002, Carson, with the legal assistance of Davis, arranged for John Quiring ("Quiring"), as "Authorized Partner" of IQ Properties, to purportedly assign those twelve units in Brighton Hills to Carson personally.  Four days later, on March 25, 2002, Carson, again with the legal assistance of Davis, purportedly assigned seven of those twelve units (later reduced to five) to Davis and his wife Cindy Davis ("Cindy"), as joint tenants.  Both assignments took place without the knowledge, consent or approval of Ito or Miyoshi and neither Ito nor Miyoshi received any compensation or return on their investment before or after the assignments.

Carson executed both assignments in his capacity as General Partner of Brighton Hills. On or around May 30, 2002, after signing the agreement, Carson resigned as the General Partner of Brighton Hills and Brighton/Shaw, Inc. ("Brighton/Shaw") became the General Partner in his place.

**PROCEDURAL HISTORY**

On August 25, 2006, the heirs and successors in interest to Ito and Miyoshi, Naoko Ito, Toshie Ito, Takafumi Ito, Michiko Morinaga and Kimiko Miyoshi Price ("Plaintiffs"), filed a complaint in this Court with seven causes of action stemming from alleged fraudulent activity

involving the twelve limited partnership units of Brighton Hills in which Ito and Miyoshi held interests.  Since then, some defendants have been dismissed from the action and other defendants have initiated cross-claims and counter-claims.

On December 3, 2007, Carson filed an amended cross-claim against Davis and Brighton Hills.  Carson alleged that Davis conducted legal malpractice when he acted as Carson's attorney for the transfer of the disputed partnership units in Brighton Hills and the subsequent litigation involving the units.  Carson claimed that Davis's actions were self-interested and breached numerous duties of care owed to him.  Carson also claimed that Davis breached an agreement to perform legal services for Carson related to claims against the disputed units.  Accordingly, Carson brought the following causes of action against Davis, for which he requested compensatory damages, punitive damages and costs: (1) professional malpractice; (2) breach of fiduciary duty; and (3) breach of contract.

On December 21, 2007, Plaintiffs filed a motion for summary judgment for conversion of the twelve units against Carson, Quiring, Davis and Cindy Davis, and for breach of fiduciary duty against Quiring.  This Court found Carson and Quiring liable for conversion of the twelve units.  On June 4, 2008, the Court denied Carson's motion for reconsideration of the Court's decision regarding the conversion cause of action.  The next day, on June 5, 2008, Davis filed the instant motion for summary judgment against Carson.

Davis seeks summary judgment in his favor on each of the causes of action brought against him in Carson's cross-claim.  Generally, Davis argues that all three of Carson's claims related to the twelve disputed partnership units are barred by the doctrine of unclean hands, since this Court found Carson liable for the conversion of those units.  More specifically to the individual causes of action, Davis argues that (1) Carson cannot prove that Davis committed professional malpractice because he failed to designate an expert; (2) Carson has produced no evidence that Davis breached any duty of fiduciary care; and (3) Davis cannot be liable for breach of contract because the alleged contract is unenforceable under the statute of frauds.

3

1   Carson filed an opposition to the motion on June 20, 2008.  Davis filed a reply on July 1,

2   2008.

3

4                                    **LEGAL STANDARD**

5   Summary judgment is appropriate when it is demonstrated that there exists no genuine

6   issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

7   Fed. R. Civ. P. 56(c); <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970); <u>Fortyune v.</u>

8   <u>American Multi-Cinema, Inc.</u>, 364 F.3d 1075, 1080 (9th Cir. 2004); <u>Jung v. FMC Corp.</u>, 755

9   F.2d 708, 710 (9th Cir. 1985).  Where summary judgment requires the court to apply law to

10  undisputed facts, it is a mixed question of law and fact.  <u>See</u> <u>Sousa v.Unilab Corp. Class II (Non-</u>

11  <u>Exempt) Members Group Benefit Plan</u>, 252 F. Supp.2d 1046, 1049 (E.D. Cal. 2002).  Where the

12  case turns on a mixed question of law and fact and the only dispute relates to the legal

13  significance of the undisputed facts, the controversy for trial collapses into a question of law that

14  is appropriate for disposition on summary judgment.  <u>See</u> <u>Union Sch. Dist. v. Smith</u>, 15 F.3d

15  1519, 1523 (9th Cir. 1994); <u>Sousa,</u> 252 F.Supp.2d at 1049.

16             Under summary judgment practice, the moving party always bears the
            initial responsibility of informing the district court of the basis for its motion, and
17          identifying those portions of "the pleadings, depositions, answers to
            interrogatories, and admissions on file, together with the affidavits, if any," which
18          it believes demonstrate the absence of a genuine issue of material fact.

19  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the

20  burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made

21  in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on

22  file.'"  <u>Id</u>.  Indeed, summary judgment should be entered, after adequate time for discovery and

23  upon motion, against a party who fails to make a showing sufficient to establish the existence of

24  an element essential to that party's case, and on which that party will bear the burden of proof at

25  trial.  <u>Id.</u> at 322.  "[A] complete failure of proof concerning an essential element of the

26  nonmoving party's case necessarily renders all other facts immaterial."  <u>Id</u>.  In such a

27

28                                          4

1   circumstance, summary judgment should be granted, "so long as whatever is before the district

2   court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

3   satisfied." Id. at 323.

4        If a moving party fails to carry its burden of production, then "the non-moving party has

5   no obligation to produce anything, even if the non-moving party would have the ultimate burden

6   of persuasion." Nissan Fire & Marine Ins. Co. v. Fritz Companies, 210 F.3d 1099, 1102-03 (9th

7   Cir. 2000). If the moving party meets it initial burden, the burden then shifts to the opposing

8   party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec.

9   Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Nissan Fire & Marine Ins., 210 F.3d

10  at 1103; Nolan v. Cleland, 686 F.2d 806, 812 (9th Cir. 1982); Ruffin v. County of Los Angeles,

11  607 F.2d 1276, 1280 (9th Cir. 1979). A fact is "material" if it might affect the outcome of the

12  suit under the governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986);

13  Thrifty Oil Co. v. Bank of America Nat'l Trust & Savings Assn, 322 F.3d 1039, 1046 (9th Cir.

14  2002). A "genuine issue of material fact" arises when the evidence is such that a reasonable jury

15  could return a verdict for the nonmoving party. See Anderson, 477 U.S. at 248-49; Thrifty Oil,

16  322 F.3d at 1046.

17       In attempting to establish the existence of a factual dispute, the opposing party may not

18  rely upon the mere allegations or denials of its pleadings, but is required to tender evidence of

19  specific facts in the form of affidavits, and/or admissible discovery material, in support of its

20  contention that the dispute exists. Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11; First

21  Nat'l Bank, 391 U.S. at 289; Willis v. Pacific Maritime Ass'n, 244 F.3d 675, 682 (9th Cir. 2001).

22  However, the opposing party need not establish a material issue of fact conclusively in its favor.

23  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the

24  parties' differing versions of the truth at trial." First Nat'l Bank, 391 U.S. at 290; Hopper v. City

25  of Pasco, 248 F.3d 1067, 1087 (9th Cir. 2001). Thus, the "purpose of summary judgment is to

26  'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

27

28                                             5

trial.'"   Matsushita, 475 U.S. at 587; Mende v. Dun & Bradstreet, Inc., 670 F.2d 129, 132 (9th Cir. 1982).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  See Fed. R. Civ. P. 56(c); Fortyune, 364 F.3d at 1079-80.  The court has the discretion in appropriate circumstances to consider materials that are not properly brought to its attention, but the court is not required to examine the entire file for evidence establishing a genuine issue of material fact where the evidence is not set forth in the opposing papers with adequate references.  See Southern Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).  The evidence of the opposing party is to be believed and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587; Stegall v. Citadel Broad, Inc., 350 F.3d 1061, 1065 (9th Cir. 2003). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Mayweathers v. Terhune, 328 F.Supp.2d 1086, 1092-93 (E.D. Cal. 2004); UMG Recordings, Inc. v. Sinnott, 300 F.Supp.2d 993, 997 (E.D. Cal. 2004).  "A genuine issue of material fact does not spring into being simply because a litigant claims that one exist or promises to produce admissible evidence at trial."  Del Carmen Guadalupe v. Agosto, 299 F.3d 15, 23 (1st Cir. 2002); see Galen v. County of Los Angeles, 477 F.3d 652, 658 (9th Cir. 2007); Bryant v. Adventist Health System/West, 289 F.3d 1162, 1167 (9th Cir. 2002).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  "A motion for summary judgment may not be defeated, however, by evidence that is 'merely colorable' or 'is

not significantly probative.'" <u>Anderson</u>, 477 U.S. at 249-50; <u>Hardage v. CBS Broad. Inc.</u>, 427 F.3d 1177, 1183 (9th Cir. 2006).  If the nonmoving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment.  <u>See</u> <u>Nissan Fire & Marine</u>, 210 F.3d at 1103.

## **DISCUSSION**

Both parties in this case submitted a Separate Statement of Uncontroverted Material Facts ("SUF").  After examining the record, the Court has determined that the relevant undisputed material facts are as follows:

**A.**   **Undisputed Material Facts**

1.   In or around 2002, Carson retained Davis, an attorney admitted to the State Bar of California, to advise and assist him with a transfer of property in Brighton Hills.

2.   On March 21, 2002, Quiring assigned twelve partnership units of Brighton Hills from IQ Properties to Carson personally.  Quiring approved and executed the assignment on behalf of IQ Properties and Carson approved and executed the assignment on behalf of Brighton Hills.  Davis prepared the legal documents effecting the assignment.

3.   On March 25, 2002, Carson assigned seven of the twelve units of Brighton Hills purportedly in his possession, later revised to five units, to Davis and Cindy Davis as joint tenants.  Davis drafted the legal documents effecting the assignment.

4.   On April 3, 2002, Davis drafted a letter disclosing the terms of the transaction.

5.   On December 23, 1995, Ito and Miyoshi transferred $2,000,000 to Carson

1    in return for an ownership interest in the twelve units.

2    6.    Neither Quiring, Carson nor Davis sought or received prior written

3          approval or consent from Ito, Miyoshi or their heirs and successors in

4          interest to conduct the assignments.

5    7.    Neither Quiring, Carson nor Davis paid any consideration to Ito, Miyoshi

6          or their heirs and successors in interest for the assignments.

7    8.    In or around 2002, Carson also retained Davis to represent him in a dispute

8          with the limited partners in Brighton Hills.

9    9.    In or around May 2002, Davis assisted Carson with negotiating and

10         entering into a Mutual Release, Assignment & Indemnity Agreement with

11         Brighton Hills.

12

13   **B.    First Cause of Action — Professional Malpractice**

14        **1.    Legal Malpractice Under California Law**

15        As this is a diversity action, the Court will look to California law for the elements of legal

16   malpractice.  Erie R. Co. v. Tompkins, 304 U.S. 64 (1938).

17        The failure to provide competent representation in a civil or criminal case may be
     the basis for civil liability under a theory of professional negligence.  In a legal
18   malpractice action arising from a civil proceeding, the elements are (1) the duty of
     the attorney to use such skill, prudence, and diligence as members of his or her
19   profession commonly possess and exercise; (2) a breach of that duty; (3) a
     proximate causal connection between the breach and the resulting injury; and (4)
20   actual loss or damage resulting from the attorney's negligence.

21   Coscia v. McKenna & Cuneo, 108 Cal. Rptr. 2d 471, 474 (2001).

22        The question of an attorney's negligence, whether the duty was breached by the attorney,

23   is one of fact and thus may only be decided in a summary judgment motion under certain

24   circumstances.  Starr v. Mooslin, 92 Cal. Rptr. 583 (Ct. App. 1971).  Whether a duty exists is a

25   question of law.  Nichols v. Keller, 19 Cal. Rptr. 2d 601, 607 (Ct. App. 1993).  But only if the

26   circumstances permit no reasonable doubt about whether the attorney's conduct did or did not

27

28                                          8

violate the duty or standard of care owed to the client, may a court, as a matter of law, resolve the question of whether an attorney breached the duty.  Likewise, the issue of causation may only be resolved by summary judgment if, under undisputed facts, there is no room for a reasonable difference of opinion.  Kurinij v. Hanna & Morton, 64 Cal. Rptr. 2d 324, 331 (Ct. App. 1997).

In this case, Carson raises a number of purported breaches of duty by Davis on the basis of which he argues that Davis committed legal malpractice.  Carson's claims are detailed in his cross-claim and brief in opposition to the present motion for summary judgment.  For the purposes of this motion, the Court will first evaluate Carson's claim that Davis breached a duty by "failing to perform adequate due diligence in determining whether Quiring had the legal authority to transfer the Brighton Hills' partnership units held by IQ Properties . . . ."  Cross-cl. at 5.

It is undisputed that Carson retained Davis, at least in part, to assist with the transfer of the partnership units.  See Carson Resp. to Davis SUF, Doc. 156-4.  Therefore, there is no question over the existence of an attorney-client relationship and the duties and standards of care inherent therein.  Carson explains that, with regard to the transfer of the units, he specifically retained Davis "to determine whether those same units could be transferred" and "to insure that the transfer he contemplated was legal . . . ."  Opp'n at 2.  However, Carson claims that Davis failed to conduct any adequate due diligence with regard to claims of ownership of the units and, instead, acted out of his own self-interest to acquire some of the units himself.  Carson claims that Davis was made aware of the possibility that Japanese investors maintained an ownership interest in the units (See Cross-Cl. at 2-3; Carson SUF at 2.) and yet he still advised Carson that he could legally proceed with the assignments.

If Davis was, in fact, aware of the Japanese investors' competing ownership interests in the units, then the diligence Davis exercised in reviewing the transaction and advising Carson to proceed was surely less than that "commonly possessed and exercised by attorneys," and a standard of care was breached.  Even if the retainer agreement between Carson and Davis was

expressly limited to assisting with the transfer of the units and did not include reviewing its

legality, though Carson maintains it did, Davis would still have breached his duty.  In California,

an attorney may still have a duty to alert the client to legal problems if they are reasonably

apparent, as they were in this case, even though they fall outside the scope of the retention.  Janik

v. Rudy, Exelrod & Zieff, 14 Cal. Rptr. 3d 751, 759 (Ct. App. 2004).  Further, if Carson relied

and acted upon Davis' erroneous advice to proceed with the transfers, as he claims he did, and

was subsequently held liable for conversion as a result of those actions, he will be able to prove

the causation and damages elements of legal malpractice.

However, Davis claims that Carson never gave any indication that either Ito or Miyoshi

had any outstanding ownership interests or rights in the units.  Davis maintains that Carson told

him that he was the legal and equitable owner of all twelve units and that Quiring had the

absolute authority to execute the assignments.  See Davis Decl. at 2.  This presents the Court

with a disputed issue of material fact.  Davis' awareness of competing ownership interests in the

units and Carson's disclosure or obfuscation of that information are significant factual issues in

this case.

Therefore the matter is not appropriate for summary judgment and the Court will deny

Davis' motion for summary judgment on Carson's first cause of action for legal malpractice.


### 2.  Expert Testimony

Aside from the factual issues discussed above, Davis argues that Carson's claim may not

be brought at all as a matter of law because Carson cannot prove that Davis fell below any

standard of care without offering expert testimony on the issue.  Davis argues that his malpractice

claims must fail because Carson has not designated an expert in this matter.  The written

designation of experts is required by Federal Rule of Civil Procedure 26(a)(2).  In this case, the

parties were directed to disclose all expert witnesses on or before March 27, 2008.  See

Scheduling Order, Doc. 121.  Carson failed to comply with the order and designate an expert on this issue by the appropriate time.

In a malpractice action, expert testimony is generally conclusive on the question of whether the attorney used such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise.  Lysick v. Walcom, 65 Cal. Rptr. 406, 419 (Ct. App. 1968).  In California, however, the standards governing an attorney's ethical duties are conclusively established by the Rules of Professional Conduct, and cannot be changed by expert testimony.  Mirabito v. Liccardo, 5 Cal. Rptr. 2d 571, 573 (Ct. App. 1992).  In fact, any expert testimony that is contrary to the rules must be disregarded.  Day v. Rosenthal, 217 Cal. Rptr 89, 102 (Ct. App. 1985).

Expert testimony is needed when it will assist the trier of fact.  It may be necessary to prove the prevailing standard of skill and learning in the locality and the propriety of particular conduct by the practitioner in particular instances.  Lipscomb v. Krause, 151 Cal. Rptr. 465, 468 (Ct. App. 1978).  A judge may rely on expert testimony to establish the standard of care in any instance when that standard is not a matter of common knowledge, or where the attorney is practicing in a specialized field.  Day, 217 Cal. Rptr. at 102.  But where the failure of attorney performance is so clear that a trier of fact may find professional negligence unassisted by expert testimony, then expert testimony is not required.  Id.

In Day v. Rosenthal, the court found that the attorney's "numerous, blatant and egregious violations of attorney responsibility were not breaches of legal technicalities for which expert testimony is required.  They were violations of professional standards; standards which the trial court was compelled to notice."  Day, 217 Cal. Rptr. at 102-3.  Davis also concedes that "where common sense dictates that a breach occurred . . . expert testimony [is] not necessary."  Mot. at 9.  Accordingly, for the purposes of this summary judgment motion, the Court may only evaluate those claims for professional malpractice that are so clearly contrary to established standards that no expert testimony is required.

1    Like in <u>Day</u>, the Court here requires no expert to explain that it is contrary to established

2    standards for an attorney to effect the assignment of personal property while fully aware that the

3    property may belong to another and then to further effect the assignment of the property to

4    himself.

5

6              **3.        Unclean Hands Defense**

7    Davis also claims that Carson may not bring any claims related to the disputed units

8    because of the doctrine of unclean hands.  The doctrine is based on the maxim that one who

9    comes into equity must come with clean hands.  <u>Stein v. Simpson</u>, 37 Cal. 2d 79, 83 (1951).

10   Unclean hands is generally an affirmative defense in actions seeking equitable relief, but the

11   defense is not limited to equity and may be asserted in legal action as well.  <u>Goldstein v. Lees</u>,

12   120 Cal. Rptr. 253, 255 (Ct. App. 1975).  In short, the unclean hands doctrine requires that a

13   plaintiff act fairly in the matter for which he or she seeks a remedy.

14   In this case, the defense is not appropriate.  A party may not sully the hands of another

15   and then argue that the other's claims are barred by their unclean hands.  If Carson hired Davis to

16   advise him as to the legality of acquiring the partnership units, and Carson was later found liable

17   for the conversion of those units as a result of actions he took *based on* Davis' deficient advice,

18   then Davis may not now invoke the unclean hands doctrine here.  The defense may not be used as

19   a shield to protect a party from its own negligence.  <u>See, e.g.</u>, <u>In re Napster, Inc. Copyright Litig.</u>,

20   191 F.Supp.2d 1087, 1111 (N.D. Cal. 2002).

21   As explained above, the Court denies Davis' motion for summary judgment of Carson's

22   first cause of action.

23

24            **C.        Second Cause of Action — Breach of Fiduciary Duty**

25   Carson also claims that Davis "failed to act as a prudent attorney and breached his

26   fiduciary duties of good faith and loyalty."  Cross-Cl. at 7.  A breach of fiduciary duty is a

27

28                                                    12

distinct cause of action from professional malpractice.  The elements of a cause of action for breach of fiduciary duty are (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach.  City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 80 Cal. Rptr. 2d 329, 355 (Ct. App. 1998).  Whether a fiduciary duty exists is generally a question of law.  David Welch Co. v. Erskine & Tulley, 250 Cal. Rptr. 339, 341 (Ct. App. 1988).  Whether the defendant breached that duty towards the plaintiff is a question of fact.  Id.

The relationship between attorney and client is a fiduciary relationship of the very highest character.  7 Cal. Jur. 3d, Attorneys at Law § 160.  As a fiduciary, an attorney must refrain from using undue influence and must be committed to the most scrupulous good faith.  See Trafton v. Youngblood, 69 Cal. Rptr. 568 (1968).  Here, it is undisputed that Davis and Carson entered into an attorney-client relationship.  Therefore, there is no question that Davis owed Carson a fiduciary duty.  This precluded Davis from making personal gains by abusing the confidence reposed in him or her by the client, by attempting to obtain secret profits, or by entering into a secret arrangement to conceal from his or her client a knowledge of the collection of money from the client.  See, e.g., Lyders v. State Bar of Cal., 12 Cal. 2d 261 (1938); Herrscher v. State Bar of Cal., 4 Cal. 2d 399 (1935).

However, Davis argues that Carson has failed to prove and is unable to prove the remaining elements of the cause of action—that he breached any fiduciary duty or that Carson suffered damages as a result of any such breach.  In the briefing for this motion, Carson failed to directly respond to Davis' arguments for summary judgment of this cause of action in his opposition brief, but it appears that his chief claim for beach of fiduciary duty is that Davis breached his duties of good faith and loyalty by self-dealing.  More specifically, Carson claims that Davis breached his duty by engaging in a self-interested transaction with Carson, through which he acquired valuable units in Brighton Hills at a fraction of their price by manipulating and ignoring the best interests of Carson.

Davis points out, and Carson concedes, however, that before engaging in the assignment of units, Carson reviewed and signed a letter prepared by Davis that explains the details of the transaction, encourages Carson to seek the advice of independent counsel on the propriety of the transaction, and waives Carson's rights to sue Davis on account of the transaction.  Davis Ex. C.  The execution of the letter / waiver agreement brings Davis' conduct into compliance with Rule 3-300 of California's Rules of Professional Conduct.  Therefore, Davis has demonstrated that there exists no genuine issue of material fact as to this element and that Davis cannot be found to have breached his fiduciary duty based on these facts.  Carson has failed to establish otherwise.

As Carson has failed to make a showing sufficient to establish the existence of each element of breach of fiduciary duty, the Court grants summary judgment for Davis on Carson's second cause of action.

### D.    Third Cause of Action — Breach of Contract

#### 1.    Elements of Breach of Contract

Carson claims that Davis entered into an agreement with Carson under which, among other things, Carson would assign a number of partnership units in Brighton Hills to Davis, and Davis would perform legal services for Carson for any issues or disputes over the units or Brighton Hills for "an indefinite period of time at no charge."  Carson claims that Davis performed under the contract, by handling all Brighton Hills-related legal work for Carson without charging him and later by retaining another local attorney to perform work for him at no cost to Carson, as late as 2004.  Carson claims that Davis breached that contract with no explanation when the instant litigation was brought by Plaintiffs and that Carson suffered damages as a result.

In California, the standard elements of a claim for breach of contract are: (1) the existence of a contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damage to the plaintiff therefrom.  See, e.g., Regan Roofing Co. v. Superior Court, 29

14

1   Cal. Rptr. 2d 413, 418 (Ct. App. 1994).

2        Davis seeks summary judgment here on the ground that Carson cannot prove the first

3   element, that Carson and Davis ever entered into a valid contract.  Davis argues that the

4   purported agreement is not to be performed within a year and therefore falls under the statute of

5   frauds.  Davis states that when "it is evident that the parties intended the agreement to continue

6   longer than a year, then applicable authority mandates that the agreement must be in writing."

7   Mot. at 15.

8

9               **2.**     **Statute of Frauds**

10       The California statute of frauds provides that certain contracts "are invalid, unless the

11  same, or some note or memorandum thereof, is in writing and subscribed by the party to be

12  charged or by his agent."  Cal. Civ. Code § 1624(a).  The statute applies to specific types of

13  contracts, including those "that by [their] terms [are] not to be performed within a year from the

14  making thereof."  Id. § 1624(a)(1).

15       As in the second cause of action, Carson also failed to directly respond to Davis'

16  arguments for summary judgment of this cause of action in his opposition brief, but it seems to

17  be undisputed that the agreement in this case was not in writing, and thus it was an oral contract,

18  if one at all.  However, Davis' defense is still unavailing for a number of reasons.  First, under §

19  1624(a)(1), the statute does not apply to contracts that are *unlikely* to be performed with a year,

20  only to contracts that, by their terms, are *impossible* to be performed within a year.  If the period

21  of performance of a contract is *indefinite*, then the statute does not apply because the contract

22  *could* be performed within a year.  See, e.g., Hollywood Motion Picture Equipment Co. v. Furer,

23  16 Cal. 2d 184, 186 (1940); Wescoatt v. Meeker, 63 Cal.App.2d 618, 624 (Ct. App. 1944)

24  (holding that statute of frauds does not apply to "contracts, either express or implied, for the

25  rendition of services for an indefinite period of time"); Fibreboard Products, Inc. v. Townsend,

26  202 F.2d 180 (9th Cir. 1953) (finding an oral contract for "permanent employment" or for

27

28                               15

employment of other indefinite duration is not within statute of frauds).  In this case, the agreement was explicitly "for an indefinite period" and is thereby excluded from the statute of frauds.

Second, even if the statute were to apply to this agreement, Davis is incorrect to argue that the agreement itself must be in writing to be enforceable.  Under the language of the California statute, "some note or memorandum," not necessarily the contract itself, must be in writing.  The memorandum or note is not the contract, but merely evidence of its terms.  Therefore, while an oral agreement may originally be subject to the bar of the statute, it may become enforceable if a note or memorandum is subsequently made.  See 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 350 at 397; Ayoob v. Ayoob, 74 Cal. App. 2d 236, 242-3 (Ct. App. 1946).

In this case, Carson points to a letter written by Davis as written evidence of the agreement.  In the two-page letter, dated April 3, 2002 and addressed to Jeffrey Boswell, counsel for Brighton Hills, Davis discloses "the terms of the Assignment" of the disputed units.  He details the amount of money being paid, refers to the "huge risk being taken on by Mr. Carson," and explains that "I have also promised an 'at cost' lot to Mr. Rob S. Carson at Brighton Crest and *have agreed to perform legal services for an indefinite period at no charge*."  Ex. B to Davis Decl. (emphasis added).

In California, the written "note or memorandum" required to satisfy the statute of frauds may well consist of a letter, even an informal one that simply makes reference to the agreement. See, e.g., King v. Stanley, 32 Cal. 2d 584, 588 (1948); Dunham, Carrigan & Hayden Co. v. Thermoid Rubber Co., 84 Cal. App. 669, 673 (1927).  The writing need not even be intended as a memorandum.

Davis concedes that he wrote the letter, but claims that he did not send it "to anyone other than, perhaps, Mr. Robert Carson" (Davis Decl. at 2) and hence, the letter should not constitute a writing.  Davis' claim that the letter was never sent is dubious because the letter was originally

16

produced as an exhibit by Carson and the letter bears the date and timestamp of a facsimile machine across the top, as well as the phrase "FROM: CRAIG A. DAVIS." Still, it is not legally relevant how many people the letter was sent to or, for that matter, whether it was sent at all. "There is no requirement of communication or even knowledge of the other party." 1 Witkin, supra § 352 at 398. A writing may consist of "an entry in a diary or in the minutes of a meeting, of a communiation to or from an agent of the party, of a public record, or of an informal letter to a third person." Restatement (Second) of Contracts § 133 cmt. b (1988).

Davis also claims that the letter should not constitute a writing because he did not sign it. According to the statute, a writing does indeed need to be "subscribed by the party to be charged" or, in other words, signed by the party against whom enforcement is sought. Davis presumably means that he did not sign the letter in his own handwriting because the letter clearly bears the typed signature, "Craig A. Davis," immediately below the closing "Very truly yours." However, the signature in a writing need not be handwritten. A typewritten, printed, or rubber-stamped signature may be used. <u>Donovan v. RRL Corp.</u>, 26 Cal. 4th 261 (2001). For the purposes of the statute of frauds, Davis' letter is considered signed by Davis.

The Court concludes that although the agreement between Carson and Davis does not fall under the statute of frauds, the letter written and signed by Davis on April 3, 2002 constitutes a writing evidencing the existence of an agreement between Davis and Carson and satisfying the requirements of the statute. Accordingly, summary judgment on the third cause of action is denied.[1]

---

[1] At the end of his brief, Davis sketches an argument based on a failure of contract due to insufficient consideration. Carson does not address the issue in opposition and Davis does not return to it in reply. Resolving the matter would involve an examination of the doctrines of illusory contract and unilateral contract with reference to the facts of this case. As the briefing stands, the argument is not fleshed out factually and cites to no legal authority. Therefore the court cannot find at this juncture, as a matter of law, that the contract is void ab initio due to failure of consideration and expresses no opinion on this matter.

17

## <u>ORDER</u>

Based on the above memorandum opinion, the Court ORDERS that:

1.  Davis' motion for summary judgment on Carson's first cause of action, legal malpractice, is DENIED;

2.  Davis' motion for summary judgment on Carson's second cause of action, breach of fiduciary duty, is GRANTED; and

3.  Davis' motion for summary judgment on Carson's third cause of action, breach of contract, is DENIED.

IT IS SO ORDERED.

**Dated:    August 7, 2008**                                     **/s/ Anthony W. Ishii**
                                                        CHIEF UNITED STATES DISTRICT JUDGE

18