**THORNTON DAVIDSON #166487**
Thornton Davidson & Associates
2055 San Joaquin Street
Fresno, CA 93721
Telephone (559) 256-9800
Telefax (559) 256-9799

Attorney for Cross-Claimant/Cross Defendant ROBERT CARSON,

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| NAOKO ITO et al., | Case No.: 1:06-cv-01135 AWI-DLB |
|---|---|
| Plaintiff, | CROSS-COMPLAINANT ROBERT CARSON'S BRIEF IN SUPPORT OF HIS ABILITY TO PROVE LEGAL MALPRACTICE AGAINST CROSS-DEFENDANT CRAIG DAVIS WITHOUT AN EXPERT WITNESS |
| v. | |
| BRIGHTON/SHAW, INC., et al., | Motions in Limine Hearing |
| | Date: March 19, 2009 |
| | Time: 9:00 a.m. |
| Defendant. | Venue: Courtroom 2 |
| and related cross-claims. | Judge:       Anthony W. Ishii |
| | Trial Date:  April 7, 2009 |

## I. INTRODUCTION

Cross-Complainant ROBERT CARSON ("CARSON") submits the following brief, as requested by the Honorable Judge Anthony Ishii, in support of his ability to prove legal malpractice against Cross-Defendant CRAIG DAVIS ("DAVIS"). CARSON's non-expert testimony is admissible on two grounds:

1.  As the Court has already held, the ethical duties established by the Rules of Professional Conduct are conclusive and cannot be changed by expert testimony. Mirabito v. Liccardo (1992) 5 Cal. Rptr. 2d 571, 573. As part of his case in chief, CARSON will prove that DAVIS breached numerous ethical duties, including failure to provide a written contract, failure

**CROSS-COMPLAINANT ROBERT CARSON'S BRIEF IN SUPPORT OF HIS ABILITY TO PROVE LEGAL MALPRACTICE AGAINST CROSS-DEFENDANT CRAIG DAVIS WITHOUT AN EXPERT WITNESS**

1

1 to provide informed written consent of DAVIS's conflict, abandonment of client, and breach of
2 the duty of loyalty; and

3     2.    DAVIS admitted in a March 19, 2002, letter to the Partnerships' attorney, Jeffrey
4 Boswell, that his "due diligence" included "the process of obtaining the underlying documents
5 concerning IQ Properties International demonstrating Mr. Quiring's authority to execute the
6 subscription agreement." As DAVIS never obtained "the underlying documents," breach of
7 contract be proven without an expert.

## II.  FACTS

Through various pleadings, including a summary judgment motion, DAVIS has taken the position that CARSON cannot prove his claim for malpractice against DAVIS without use of an expert witness. Since CARSON did not designate such a witness, DAVIS argues that CARSON should not be permitted to introduce evidence of DAVIS's breaches since he is not competent to testify as to the standard of care for an attorney in DAVIS's position.

Recently, during a pre-trial conference held in the chambers of the Honorable Anthony Ishii, DAVIS's counsel was heard to argue that DAVIS intended to testify about the "due diligence" in which he engaged before participating in the transfer of the units held by IQ Properties International. Said counsel contended that no lay-person would be able to competently testify that DAVIS's due diligence fell below the standard of care. At the time, the Court invited the parties to provide briefing on the subject.

As the undisputed facts show, DAVIS breached his ethical obligations (as set forth in the Rules of Professional Responsibilty) in the following respects: a)he failed to provide CARSON a written contract (B&P 6148(a)). Because there was no fee agreement, DAVIS never provided CARSON an identified scoop of retention; b) he failed to provide informed written consent in that CARSON was not given time to understand and comprehend nature and extent of conflict in that the conflict waiver and transfer documents were signed the same day (CRPC 3-310(A)(2)); c) he abandoned his client (CRPC 3-110(A)), which also constitutes improper withdrawal under CRPC 3-700(A)(2); and d) he breached the duty of loyalty in that there must be absolute and

---

**CROSS-COMPLAINANT ROBERT CARSON'S BRIEF IN SUPPORT OF HIS ABILITY TO PROVE LEGAL MALPRACTICE AGAINST CROSS-DEFENDANT CRAIG DAVIS WITHOUT AN EXPERT WITNESS**

complete fidelity by the attorney to his client (ABA Model Rule 1.7 and Cal. State Bar Form.Opn. 1984-83).

DAVIS admitted in a March 19, 2002, letter to Mr. Boswell, and as part of his "due diligence," he was "in the process of obtaining the underlying documents concerning IQ Properties International demonstrating Mr. Quiring's authority to execute the subscription agreement." (Copy attached hereto as Exh. "A".)  Additionally, in his deposition by CARSON's counsel, in response to the question: "What steps did you take to determine whether John Quiring had the capacity to authorize the transfer of the shares to Rob Carson?", DAVIS clearly identifies "the underlying documents" he is looking for:

> "I also asked Mr. Carson to get a hold of the daughter of one of the Japanese investors that he told me was living in Hawaii.[1]  He insisted no.  I asked for a copy of the I.Q. general partnership agreement.  In fact, Mr. Boswell and I had been trying to get a hold of that for sometime.  Mr. Quiring told me that, you know, he had looked for it; couldn't find it.  We requested records from John Cardot.  I asked [CARSON].  No one could locate it."

In fact, as revealed during the deposition of JOHN QUIRING, he had the partnership agreement (which was limited and not general), in his files all along.  Moreover, as discussed at length in the Court's July 7, 2008 Summary Judgment Opinion, the partnership in which the Japanese were limited partners was called, "IQ Properties – BHLP," not IQ Properties International.

### III.  LEGAL ARGUMENT

The Court has already addressed CARSON's ability to testify about DAVIS's ethical breaches, which included the lack of a fee agreement, his abandonment by DAVIS, and the inadequate conflict waiver.

As to the matter is DAVIS's admission that his due diligence included his obligation to obtain documents authorizing JOHN QUIRING to transfer the 12 units to CARSON, FRE 801(d)(2) provides that an admission is an out-of-court "statement...offered against a party."  The rationale for treating these statements as nonhearsay is that "their admissibility in evidence is the

---

[1] This reference to the Japanese investors also undermines another key component of DAVIS's argument: that he had no knowledge that the Japanese had any legal or equitable interest in the units being transferred. In fact, if that was his position, it begs the question why DAVIS was seeking to contact the Japanese investors as part of his "due diligence."

**CROSS-COMPLAINANT ROBERT CARSON'S BRIEF IN SUPPORT OF HIS ABILITY TO PROVE LEGAL MALPRACTICE AGAINST CROSS-DEFENDANT CRAIG DAVIS WITHOUT AN EXPERT WITNESS**

3

result of the adversary system rather than satisfaction of the conditions of the hearsay rule." (FRE 801(b)(2), Adv. Comm. Notes.)

The so-called "opinion rule" requires that a person's testimony must be rationally based on the witness' perception.  (FRE 701; Kloepfer v. Honda Motor Co., Ltd. (10th Cir. 1990).)  But an admission is "free from the restrictive influences of the opinion rule."  (FRE 801(d)(2), Adv. Comm. Notes; Owens v. Atchison, Topeka & Santa Fe Ry. Co., 393 F.2d 77, 79 .)

Expert testimony is needed if it assists the trier of fact.  No such assistance is needed here.  DAVIS's ethical breaches are so obvious and egregious that a lay person can recognize they fall below the standard of care.  In the case of DAVIS's purported "due diligence," CARSON contends that the failure to obtaining the authorizing document is such conduct as also obviously falls below the standard of care.  But such contention need not be debated because DAVIS identified the key component of his due diligence, "obtaining the underlying documents concerning IQ Properties International demonstrating Mr. Quiring's authority to execute the subscription agreement."

That silences any need for any expert to identify what acts an attorney must take in competent discharge his responsibilities for the legal tasks for which he was hired.  Here, CARSON wanted to transfer units held by IQ Properties (International or BHLP) to himself, and then a portion to DAVIS.  He hired DAVIS to ensure that that transfer was legal and sufficient as he was foregoing all the partnership benefits which accrued to him as the General Partner and agreeing to defend and indemnify the same partnerships from any liability arising from the transfer.

DAVIS's admission makes clear that he, as much as anyone, knew the scope of his responsibilities, which he breached.  An expert need not testify under these circumstances.

Dated: February 23, 2009
/S/Thornton Davidson
Thornton Davidson, Attorney for
Cross-Claimant/Cross-Defendant
ROBERT CARSON

**CROSS-COMPLAINANT ROBERT CARSON'S BRIEF IN SUPPORT OF HIS ABILITY TO PROVE LEGAL MALPRACTICE AGAINST CROSS-DEFENDANT CRAIG DAVIS WITHOUT AN EXPERT WITNESS**
4