Marshall C. Whitney, # 082952
Mandy L. Jeffcoach, #232313
McCORMICK, BARSTOW, SHEPPARD,
   WAYTE & CARRUTH LLP
P.O. Box 28912
5 River Park Place East
Fresno, CA 93720-1501
Telephone:   (559) 433-1300
Facsimile:    (559) 433-2300

James B. Betts, # 110222
Joseph D. Rubin, # 149920
BETTS & WRIGHT, A PROFESSIONAL
CORPORATION
P.O. Box 28550
Fresno, CA 93729-8550
Telephone:   (559) 438-8500
Facsimile:    (559) 438-6959

Attorneys for Cross-Defendant
CRAIG A. DAVIS

(SPACE BELOW FOR FILING STAMP ONLY)

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAOKO ITO, TOSHIE ITO, TAKAFUMI ITO, MICHIKO MORINAGA and KIMIKO MIYOSHI PRICE,<br><br>Plaintiffs,<br><br>v.<br><br>BRIGHTON/SHAW, INC., BRIGHTON HILLS, LTD., JOHN E. QUIRING, ROBERT CARSON, individually, ROBERT CARSON, as General Partner of BRIGHTON HILLS, LTD., CRAIG DAVIS and CINDY DAVIS,<br><br>Defendants.<br><br>AND RELATED CROSS ACTION | Case No. 06-CV-1135 AWI-DLB<br><br>**CRAIG DAVIS' TRIAL BRIEF** |

Cross-Claimant and Cross-Defendant, CRAIG DAVIS, ("DAVIS") submits the following Trial Brief pursuant to this Court's Pretrial Order issued on January 16, 2009 and revised on March 3, 2009.

I.

**BRIEF STATEMENT OF FACTS**

Sometime in 2001, CARSON retained DAVIS' services for the purpose of acquiring 12 partnership units in Brighton Hills held by IQ Properties International and negotiating his resignation as General Partner of two partnerships known as Brighton Hills and Shaw Academy Associates. The Limited Partners had demanded CARSON's resignation because they believed he had breached his fiduciary duties to the partnership and had misappropriated partnership funds.

After a series of extensive negotiations, CARSON entered into a Mutual Release, Assignment & Indemnity Agreement with Brighton Hills (hereafter referred to as the "Agreement"). The Agreement made it possible for CARSON to avoid a highly contentious lawsuit by the Limited Partners to recoup funds that they allege were misappropriated by him.[1] CARSON executed the Agreement, acknowledging that he had read and understood the same. As part of his obligations, CARSON agreed to indemnify the Limited Partners and the Limited Partnership with respect to any claims which may have been asserted by the Japanese Investors.

In addition, CARSON also asked DAVIS to provide him with legal advice regarding acquiring 12 units of Brighton Hills that were held by IQ Properties. At that time, CARSON approached DAVIS about possibility of DAVIS purchasing a portion of the 12 units. In that regard, CARSON made the following representations to DAVIS:

 1. That John Quiring was a general partner in the partnership known as IQ Properties, which owned the 12 units;

 2. That John Quiring possessed the authority to transfer, sell, assign and/or hypothecate the 12 units; and

 3. That there were no other individuals or entities that possessed a valid claim of ownership in the 12 units.

The evidence has demonstrated, and will demonstrate, that at the time that the aforementioned

---

[1] In particular, the Limited Partners' claims included, but were not limited to, CARSON obtaining a Ferrari automobile using partnership funds that he used for personal use, taking $2 million dollars from Japanese investors and failing to credit the partnership, loaning partnership funds to personal friends, spending partnership monies on personal expenses and travel, and placing partnership funds into his personal accounts.

representations were made, CARSON knew, or should have known, that they were false. This is because CARSON admittedly knew that the Japanese investors had a beneficial interest in the units; a fact that he never disclosed to DAVIS[2].

In connection with these representations, CARSON informed DAVIS that John Quiring owed a debt to the Limited Partnership in the amount of $75,000. As a result, and in exchange for a portion of the units[3], DAVIS satisfied Mr. Quiring's debt to the Limited Partnership[4], agreed to quit billing CARSON with respect to the negotiations with the Limited Partnership and sold CARSON a lot at Brighton Crest for a discounted price. This transaction was memorialized by the parties in a subsequent writing, wherein CARSON once again affirmed his obligation to "indemnity the limited partnership and partners with regard to the Japanese investment." Significantly, the parties further agreed that DAVIS had "refused to indemnify anybody", including CARSON, with regard to the Japanese Investors and any claims that may be asserted by them.

## II.

## RELEVANT RULINGS BY THE COURT

This matter has enjoyed a tortured procedural history that consisted of numerous claims being asserted by various parties. In the end, the only claims that remain are the claims between CARSON and DAVIS. Specifically, the following claims are the subject to this litigation:

    a.    CARSON's claim for legal malpractice against DAVIS;

    b.    CARSON's claim for breach of contract against DAVIS; and

    c.    DAVIS' claim for fraud against CARSON.

Throughout this action, there have been various rulings that are important to the instant matter.

---

[2] In fact, after DAVIS learned of CARSON's misrepresentations, DAVIS returned his units to Plaintiffs.

[3] The evidence demonstrates that originally DAVIS was suppose to obtain 7 units, but eventually received 5 units.

[4] The evidence will prove that DAVIS in fact remitted payment in the amount of $77,012.

1.  CARSON has been found liable for conversion as to the units. (Court's Order dated March 13, 2008; Court's Order dated June 3, 2008.)[5]

2.  That Court recently ruled that CARSON's claim for professional negligence will not go to the jury unless CARSON can prove one of the following:

    a.  That DAVIS actually knew the Japanese investors claimed an interest in the 12 units;

    b.  That DAVIS actually knew that John Quiring had no authority to transfer the 12 units to CARSON; and

    c.  DAVIS did absolutely no due diligence.

    d.  CARSON's malpractice claim will not proceed on the claim that DAVIS fell below the standard of care by allowing him to enter into the Settlement and Release Agreement and giving up his interest in the partnership.

## III.
## LEGAL ISSUES

**A.  Disputed Issues of Substantive Law**

Following the direction of the Court as set forth in the Pretrial Order, DAVIS does not set forth all of the general legal principles that govern the claims in this case. Rather, DAVIS only sets forth the law as it pertains to the substantive and evidentiary legal issues that he currently anticipates will be in dispute at trial[6].

---

[5] DAVIS hereby admits that he cannot use this ruling to assert that CARSON committed a fraud or stole the units; however, the finding of the Court that he converted the units is binding and can be presented to the jury.

[6] As the Court is aware, DAVIS has fully analyzed the standards for proving legal malpractice and CARSON's burden in his Motion *in Limine* No. 1 and the Joint Status Report submitted by the parties. For the sake of brevity, DAVIS incorporates the same herein.

1. *The April 3, 2002 Unsigned Letter From DAVIS To Jeffrey Boswell Is Hearsay, But Is Nonetheless Admissible For A Limited Purpose.*

The Federal Rules of Evidence define "hearsay" as an out-of-court statement "offered in evidence to prove the truth of the matter asserted." (Fed. R. Evid. 801(c).) Hearsay includes writings. (Jones, Rosen, Wegner & Jones, Rutter Group Practice Guide: Federal Civil Trials & Evidence (TRG 2008) Hearsay vs. Non-hearsay, § 8:1774, pg. 1029.) "If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay." (Fed. R. Evid. 801 advisory committee's note (1972).) A statement is not hearsay if it affects the legal rights of the parties. (N.L.R.B. v. H. Koch & Sons, 578 F.2d 1287, 1290-1291 (9th Cir. 1978).) However, a party cannot simply characterize a statement as an offer in order to avoid the hearsay rule of exclusion. Rather, only "utterances by the parties . . . constituting the offer and acceptance *which brought the contract into being*" qualify as verbal acts. (McCormick on Evidence § 249 (5th ed. 1999) [emphasis added].) If the utterance is not the statement that brought the purported contract into existence, then it is inadmissible.

Here, CARSON intends to introduce the April 3, 2002 into evidence as proof of his alleged contract with DAVIS. In other words, CARSON intends to offer the letter as "the contract" as opposed to evidence of the contract coming to existence. As a result, the letter is inadmissible for that purpose. Nonetheless, the letter is admissible to demonstrate that CARSON acknowledged that he agreed to indemnify and defend the Limited Partners and the Limited Partnership and that DAVIS would not indemnify anyone, including CARSON against the Japanese Investors' claims, if any. Specifically, the writing constitutes the acknowledgement of CARSON's obligations that eventually came into being by virtue of the Agreement. In other words, the writing confirms CARSON's legal obligations, which are fully memorialized in the subsequent Agreement. (N.L.R.B., supra, 578 F.2d at 1290-1291.)

Federal Rule of Evidence Rule 105 clearly allows evidence to be submitted for a limited purpose. When evidence is admitted for a limited purpose, the jury should be instructed accordingly. (Federal Civil Trials & Evidence, supra, Limited Admissibility, §8:4758, pg. 1517,

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

5

CRAIG DAVIS' TRIAL BRIEF

citing, 9th Cir. Civ.Jur.Instr. 2.8.) Limiting the admissibility of certain evidence and instructing the jury accordingly is appropriate to avoid confusing the jury. (<u>Ibid</u>.) As a result, DAVIS intends to seek a limiting instruction as to the April 3, 2002 letter so that it is not admitted as DAVIS' affirmative obligation to pay for CARSON's fees, but can be offered for another non-hearsay purpose.

   2. *CARSON's Representations To DAVIS As To The Character Of The Units And John Quiring's Ability To Transfer The Same Were Fraudulent.*

   "Fraud" is defined in Civil Code §§1572 and 1710. The essential elements of a claim of fraud by misrepresentation are:

> (1) The defendant made a representation as to a past or existing material fact;
>
> (2) The representation was false;
>
> (3) The defendant knew or should have known that the representation was false when made;
>
> (4) The defendant made the representation with an intent to induce plaintiff's reliance and to act or refrain from acting in reliance;
>
> (5) The plaintiff was unaware of the falsity of the representation, acted in reliance upon the truth of the representation and was justified in relying upon the representation; and
>
> (6) As a result of the reliance upon the truth of the representation, the plaintiff sustained damage.

(Civil Code §§ 1572, 1709, 1710; <u>Engalla v. Permanente Medical Group, Inc.</u> (1997) 15 Cal.4th 951.) Misrepresentations as to the value of property and the character of the same constitute actionable fraud. (<u>Green Trees Enterprises, Inc. v. Palm Springs Alpine Estates, Inc.</u>, 66 Cal 2d 782 (1967).) Actual knowledge that the representations are false is not necessary in order to be liable for fraud. (<u>Yellow Creek Logging Corp. v. Dare</u>, 216 Cal App 2d 50 (1963).) Instead, a person commits fraud when he lacks the honest belief in the truth of the statements, or he made the statements carelessly and recklessly in manner not warranted by information available to him. (<u>Id</u>. at 57.)

   It is well established that punitive damages are not recoverable as a matter of right, but rather may be only awarded in cases involving fraud, oppression, or malice. (<u>Millar v. James</u>,

254 Cal.App.2d 530 (1967); Civil Code § 3294(a). The purpose of punitive damages is to punish wrongdoers and thereby deter the commission of wrongful acts. (Romo v. Ford Motor Co., 113 Cal. App. 4th 738, 745 (2003).) In order to warrant the allowance of punitive damages the act complained of must not only be willful in the sense of intentional, but it must also be accompanied by aggravating circumstances, amounting to malice. (Ebaugh v. Rabkin (1972) 22 Cal.App.3d 891). The malice required implies an act conceived in a spirit of mischief or with criminal indifference towards the obligations owed to others. (Ibid.)

A defrauded party is ordinarily limited to recovering his "out-of-pocket" loss. (Kenly v. Ukegawa (1993) 16 Cal. App. 4th 49, 53; Alliance Mortgage Co. v. Rothwell (1995) 10 Cal.4th 1226.) If the evidence demonstrates malice, fraud or oppression as to the misrepresentations, however, the moving party is also entitled to recover punitive damages. (Wyatt v. Union Mortgage Co. (1979) 24 Cal. 3d 773, 790; Branch v. HomeFed Bank (1992) 6 Cal. App. 4th 793, 799.) In addition, the jury has the discretion to award prejudgment interest on the party's loss "from the time the plaintiff parted with the money or property on the basis of the defendant's fraud." (Nordahl v. Dept. of Real Estate (1975) 48 Cal. App. 3d 657, 665.)

DAVIS submits that the evidence will show that at the time that CARSON made the representations, he knew that the Japanese had a beneficial interest in the units, but never disclosed that fact to DAVIS. Instead, he represented to DAVIS that no one had a beneficial interest in the units. Likewise, the evidence will demonstrate that CARSON knew that Mr. Quiring did not have the authority to transfer the units, but told DAVIS otherwise. Based upon these representations, DAVIS is entitled to out of pocket damages, punitive damages and pre-judgment interest.

**B.     Disputed Issues of Evidentiary Law that Will Not Be Resolved *in Limine***

DAVIS is presently unaware of any issues of evidentiary law that have not been resolved by this Court at the May 11, 2009, hearing on the parties respective motions *in limine* other than those noted above. DAVIS, however, reserves the right to provide the Court with "pocket" and/or supplemental briefs relative to any issues of evidentiary law that may be raised during trial.

## IV.

## **RELIEF TO WHICH DAVIS IS ENTITLED**

DAVIS is entitled to the following monetary and equitable relief as a direct and proximate result of CARSON's wrongful acts:

1. For compensatory damages in the amount of $77,012, which represents the money that was paid for the units;

2. Recovery of the value of the lot at Brighton Crest, after the purchase price to CARSON is subtracted;[7]

3. Pre-judgment interest from March 24, 2002 (the date in which the transfer was made);

4. Exemplary damages for CARSON's fraudulent conduct;

5. As the to CARSON's claims for Legal Malpractice, Judgment in favor of DAVIS and against CARSON; and

6. As the to CARSON's claims for Breach of Contract, Judgment in favor of DAVIS and against CARSON.

Dated: May 13, 2009                                   Respectfully submitted,

McCORMICK, BARSTOW, SHEPPARD,
WAYTE & CARRUTH LLP


By:     /s/ Marshall C. Whitney
            Marshall C. Whitney
            Mandy L. Jeffcoach
        Attorneys for Cross-Defendant
            CRAIG A. DAVIS

51669/00226-1394778.v1

---

[7] DAVIS submits that evidence will be presented that CARSON subsequently sold the Brighton Crest lot for $160,000 to Bryan Nell, thereby recognizing a profit of over $100,000. "But for" CARSON's representations, DAVIS would not have sold the lot, thereby suffering damages.