THORNTON DAVIDSON   #166487
DAVIDSON & HAWKINS
An Association of
Attorneys at Law
2055 San Joaquin Street
Fresno, California 93721
Telephone:  (559) 256-9800
Facsimile:  (559) 256-9791

Attorney for Defendant/Cross-Complainant, Robert CARSON

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

* * * * *

| | |
|---|---|
| NAOKO ITO et al., | CASE NO.: 06-CV-1135-AWI-DLB |
| Plaintiffs, | **PLAINTIFF ROBERT CARSON's TRIAL BRIEF OR, IN THE ALTERNATIVE, REQUEST FOR RECONSIDERATION OF CERTAIN OF THE COURT'S IN LIMINE ORDERS** |
| vs. | |
| BRIGHTON/SHAW, INC. et al. | |
| Defendants. | Date: June 2, 2009 |
| And Related Cross-Claims. | Time: 8:30am<br>Judge: Ishii<br>Courtroom: 2 |

//

//

//

//

//

//

//

**TRIAL BRIEF**                               1

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES**..................................................................................................ii

**I.    Introduction and Nature of Request**..................................................................1

**II.   CARSON's Position**...............................................................................................2

**III.  Expert Testimony is Not Needed For CARSON'S Malpractice Claim**..................................................................................................................5

    A.   DAVIS' Admission is Outside the Opinion Rule..........................5

    B.   Expert Testimony is Not Needed to Prove Causation............6

    C.   The Jury Does Not Need Expert Testimony: General Expert Cases..............................................................................................6

    D.   The Jury Does Not Need Expert Testimony: California Authority.......................................................................................10

**TRIAL BRIEF**                                              i

# TABLE OF AUTHORITIES

**Cases**

*Curtis v. Oklahoma City Public Schools Board of Education*,
    147 F. 3d 1200 (10th Cir. 1998)..................................................9,10

*Goebel v. Lauderdale*,
    214 Cal 3d 1502 (1989)..................................................11

*Stanley v. Richmond*
    35 Cal 4th 1070 (1995)..................................................11

*Lara v. Nevitt*
    123 Cal 4th 454 (2004) ..................................................10,11,12

*Mast v. Magpusao*
    180 Cal 3d 775(1986)..................................................10

*Neel v. Magana, Olney, Levy, Cathcart & Gelfand*,
    6 Cal 3d 176(1971)..................................................6

*Orrick Herington v. Sup. Ct.*
    107 Cal.App.4th 1052 (2003)..................................................4

*Persinger v. Norwolk & Western Railway Company*,
    920 F. 2d 1185 (4th Cir. 1990)..................................................9

*Pete v. Henderson*
    124 Cal.App.2d 487 (1954)..................................................2

*Prentice v. North Amer. Title*
    59 Cal.2d 618 (1963) ..................................................4

*Smith v. Lewis*
    13 Cal.3d 349 (1975) ..................................................3

*United States v. Fredette*,
    315 F. 3d 1235 (10th Cir. 2003)..................................................8

*United States v. Hannah*,
    293 F. 3d 1080 (9th Cir. 2002)..................................................6,7

*United States v. Seschillie*,
    310 F. 3d 1208 (9th Cir. 2002)..................................................7,8

*Zolinger v. Owens-Rockway Glass Container, Inc.*,
    233 F. Supp. 2d 349 (N.D.N.Y. 2002)..................................................8

**TRIAL BRIEF**                                ii

Plaintiff ROBERT CARSON ("CARSON") submits the following Trial Brief or, in the alternative, a Request for Reconsideration, in advance of the Jury Trial scheduled for June 2, 2009.

## I. Introduction and Nature of Request

CARSON's immediate concern is that, through certain in limine rulings, the Court has truncated CARSON's liability and damages claims beyond that necessary to preclude the introduction of improper or irrelevant evidence.  In particular, the Court made the following rulings during the In Limine hearing:

> A.  That CARSON could not, without an expert witness, claim that Defendant CRAIG DAVIS ("DAVIS") committed professional malpractice when he advised CARSON to sign the Settlement Agreement with his former partnerships versus elect to litigate the claims advanced by Jeffrey Boswell and his proposed complaint.

In fact, CARSON does not intend to found any element of DAVIS's malpractice on any such advice.  As their deposition testimonies make clear, CARSON denied the partnership's allegations but was willing to forfeit his rights with the partnerships so long as we could lawfully possess at least six of the IQ Properties units, for which he hired DAVIS.  DAVIS claims that CARSON admitted to all the allegations and told him (DAVIS) that he did not want to litigate against the partnership.  Thus,

for partially contradictory reasons, the parties agree that CARSON elected to forfeit his general partnership positions and the monetary benefits available through the partnerships available to CARSON upon his departure.

*The problem is that DAVIS has construed the Court's In Limine Order that CARSON cannot based his malpractice claim on DAVIS's failure to evaluate the merits of these choices <u>to include access to the damages arising from the professional malpractice which the Court has recognized CARSON may prevail on.</u>*

In short, assuming CARSON testifies that the only reason he entered into the Settlement Agreement with the partnerships was because DAVIS had assured him that the transfer of the units was legally proper and the jury finds that DAVIS knew about the Japanese investors' interest in the units,[1] then CARSON is entitled to "all damages directly and proximately caused by [the attorney's] negligence." Pete v. Henderson (1954) 124 Cal.App.2d 487, 489.

II. CARSON's Position

In this instance, CARSON is legally entitled to claim that, as a direct and proximate result of DAVIS's malpractice, he signed a Settlement Agreement which: a) cost him specific monetary benefits available to him upon his departure as General

---

[1] Or, assuming arguendo, either of the other two of the Court's bases for legal malpractice in this case.

**TRIAL BRIEF**                                              2

Partner; b) required him to defend and indemnify the partnerships; and c) required him to defend himself against the Japanese investors.

This final element is not so much the result of DAVIS advising CARSON to sign the Settlement Agreement as the result of his advice to accept the transfer of the units. As a direct and proximate result of that advice, CARSON was thrust into a lawsuit with the Japanese which cost him nearly $130,000.

Contrary to the Court's Order (and DAVIS's suggestion), CARSON does not need to prove that DAVIS did not perform proper legal services by failing to advise CARSON of the relative merits of settlement versus accepting the units. Once he negligently proposed accepting the units (assuming that negligence meets with Court's threshold), the loss of the monetary benefits from the partnership is damage which would not have occurred otherwise. Smith v. Lewis (1975) 13 Cal.3d 349, 360.

The Court has also ordered that CARSON is not able to advance his claim of abandonment against DAVIS as a basis for malpractice. While CARSON concedes this point, the loss of this claim should not deprive CARSON of claiming, in the malpractice claim, that his attorney's fees incurring defending against the Japanese investors' heirs, are relegated solely to the Breach of Contract Cause of Action.

**TRIAL BRIEF** 3

It is well established that the "tort of another" forms a legal basis for an attorney's liability to his client. Here, again assuming DAVIS' malpractice in advising CARSON to accept the Japanese units, such advice resulted in the Japanese heir's claims against CARSON (and others) for that transfer. "A person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation for the reasonably necessary loss of time, attorney's fees, and other expenditures thereby suffered or incurred." Orrick Herington v. Sup. Ct. (2003) 107 Cal.App.4th 1052, 1059, quoting, Prentice v. North Amer. Title (1963) 59 Cal.2d 618, 620.

Here, DAVIS will be heard to say that he should not have defended himself against the Japanese heir since the units were not his. But CARSON had no choice but to so defend; he was being sued for more than the transfer of the units. Secondly, he believed, based on DAVIS's advice, that the units were his.

Thus, the fact that CARSON may not pursue DAVIS for client abandonment does not deprive him of the right to obtain his attorney's fees and costs as damages in the malpractice case generally.

//
//
//

**TRIAL BRIEF**  4

III. Expert Testimony is Not Needed For CARSON'S Malpractice Claim

Lastly, in colloquy from the bench, the Court indicated that DAVIS's admission that his "due diligence" included obtaining the documents authorizing Mr. Quiring to transfer the units was without legal consequence in the proof of the professional malpractice claim.  In support of its position, the Court stated that DAVIS was not a legal malpractice expert.

A. DAVIS' Admission is Outside the Opinion Rule

As previously set forth in CARSON's Motion in Limine on the Issue of DAVIS's professional malpractice, the status of DAVIS's statement as an admission brings it outside the scope of the "opinion rule," such that DAVIS does not need to be a malpractice expert to so opine.  Once DAVIS identifies that his "due diligence" includes identifying and locating the authorizing document, <u>then he is strictly bound by that admission</u>.  His failure to locate the document constitutes malpractice – without the need (as the Court identifies it) of proving that DAVIS actually knew of the Japanese investors' claim to the units.

This admission by DAVIS is critical to CARSON's case in that DAVIS identified in writing his need to obtain a written document which provided Quiring's authority, did not, and nonetheless recommended CARSON accept the transfer – without advising him of the consequence should a document arise in which Quiring not only

**TRIAL BRIEF**                    5

did not have the authority but wherein the authority vested in others.

B. <u>Expert Testimony is Not Needed to Prove Causation</u>

Furthermore, DAVIS' statement (writing) is sufficient <u>without</u> expert opinion testimony, support proof of causation. "Legal malpractice consists of the failure of an attorney 'to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake.' (citation). When such failure proximately causes damage, it gives rise to an action in tort. Since in the usual case, the attorney undertakes to perform his duties pursuant to a contract with the client, the attorney's failure to exercise the requisite skill and care is also a breach of an express or implied term of that contract. Thus legal malpractice constitutes both a tort and a breach of contract." <u>Neel v. Magana, Olney, Levy, Cathcart & Gelfand</u>, (1971) 6 Cal 3d 176, 180. DAVIS' written commitment is part of his <u>contractual</u> obligation to CARSON. Expert testimony is <u>not</u> necessary on this issue <u>or</u> to prove that DAVIS' failure to comply causes CARSON's damages.

C. <u>The Jury Does Not Need Expert Testimony: General Expert Cases</u>

Expert testimony is admissible under Federal Rules of Evidence 702, <u>only</u> if it addresses an issue beyond the common knowledge of the average lay person. <u>United States v. Hannah</u>, 293 F. 3d 1080, 1086 (9th Cir. 2002). In <u>Hannah</u>, the defendant prepared and distributed various documents suggesting the President should be killed, four law enforcement officers were

**TRIAL BRIEF** 6

allowed to testify that they understood Hannah's communications to be a serious threat to kill the President. Id. at p. 1085. The Ninth Circuit agreed with Hannah that the district court abused its discretion in allowing this testimony. The issue the jury was called upon to decide was whether a reasonable person in Hannah's position would foresee that his communications would be perceived by those to whom he communicated as serious expressions of intent to harm the President. "Without additional assistance, the average lay person is qualified to determine what a 'reasonable person' would foresee under the circumstances." Id. at p. 1086. The court also noted that the probative value of the law enforcement testimony was minimal because Hannah did not send his writings to law enforcement agents, he distributed them to neighbors and businesses. Id. The court also concluded that the erroneous admission of the expert testimony was prejudicial because it created a significant danger that jurors would conclude erroneously that they were not the best qualified to assess the foreseeable reaction to Hannah's letters and therefore should defer to the experts. Id. at p. 1087.

In United States v. Seschillie, 310 F. 3d 1208 (9th Cir. 2002), while the district court allowed an expert witness to testify generally about accidental gun discharge theories, it did not allow him to offer an opinion concerning whether the four shootings at issue in the case were accidental or to comment on the particular facts of the case. Id. at p. 1211. The Ninth Circuit held that the district court did not abuse its discretion. The district court concluded that the jury could determine as a matter of common sense whether the shootings as

**TRIAL BRIEF**   7

described by the victims were accidental according to the expert's theories and would not be assisted in that determination by any specialized knowledge. "A district court does not abuse its discretion when it refuses expert testimony where the subject does not need expert 'illumination' and the proponent is otherwise able to elicit testimony about the subject." Id. at p. 1212.

In United States v. Fredette, 315 F. 3d 1235 (10th Cir. 2003), the district court refused to admit expert testimony from James Feldman, a "marketing expert who makes himself available for counseling and consulting in trial testimony." Feldman intended to compare the "breakage rules and requirements" for debt program to other programs based on his purported knowledge of standards in the rebate industry. Id. at pp. 1238-1239. The district court found Feldman's testimony to be unreliable and unnecessary because it did not deal with matters outside everyday knowledge of a typical juror. Id. at pp. 1239-1240. The court of appeal affirmed, reasoning that most jurors were familiar with rebate programs and how they work and were able to draw their own conclusions about such programs. Id. at p. 1240.

In Zolinger v. Owens-Rockway Glass Container, Inc., 233 F. Supp. 2d 349 (N.D.N.Y. 2002) the court excluded proposed expert testimony on the ultimate issue of whether a forklift was operated in a safe and prudent manner. "The trier of fact is perfectly capable of evaluating the totality of the evidence in this regard (including evidence regarding OSHA regulations, ASME's and defendant's guidelines for operating forklifts, [the witness'] testimony regarding the operation of his forklift, and

**TRIAL BRIEF** 8

the number of other individuals he believed to be in the warehouse, and [the witness'] reasons for allegedly not complying with any applicable regulations and guidelines) and determining whether [the witness] was operating the forklift in a safe and prudent manner." Id. at p. 344.

In Persinger v. Norwolk & Western Railway Company, 920 F. 2d 1185 (4th Cir. 1990), the court affirmed the district court's decision to exclude expert testimony regarding technical safety manuals because it related to matters within the common knowledge of the jurors. The court explained that "When stripped of its technical gloss, however, Dr. Kroemer's testimony did no more than state the obvious. He testified that he applied the industry safety formula to determine the weight that Persinger could safely lift. The formula, however, was based on several basic variables including the distance of the lift, the distance from the body at which the weight was held. The typical juror knows that it is more difficult to lift objects from a seated position, especially when the lift is away from the body rather than close to the body." Id. at p. 1188.

In Curtis v. Oklahoma City Public Schools Board of Education, 147 F. 3d 1200 (10th Cir. 1998), the court affirmed a decision limiting the expert testimony of a witness who sought to testify that a recruitment plan a supervisor directed the plaintiff to execute was unreasonable and retaliatory. The district court held that the witness could testify about what constitutes effective recruitment in the particular context of historically black colleges and universities and about the difficulty and potentially negative effects of recruiting at

these institutions during the summer months, but refused to allow the witness to state his conclusions whether the recruiting plan in the case was effective and whether the plan constituted harassment or retaliation. Id. at p. 1218. The court explained that the decision to limit expert testimony in areas which were readily within the comprehension and the ability of the jury was not an abuse of the court's discretion because the jury could determine for itself whether the recruitment plan in the case was ineffective and whether it was evidence of retaliation. Id. at p. 1219.

### D. The Jury Does Not Need Expert Testimony: California Authority

The primary purpose of expert testimony is to supply "missing links" for the benefit of the trier of fact when the facts or issues are alien in the terminology or the technical complexities are beyond the common knowledge and understanding of lay experience.  Thus, even if professional negligence is in issue, the case may go to jury without expert testimony if the subject matter is such that lay persons could infer from common knowledge that the injury would not have occurred absent negligence.  Mast v. Magpusao (1986) 180 Cal 3d 775, 225 CR 689; Lara v. Nevitt (2004) 123 Cal 4th 454, 458-461.

Expert testimony is not required in a legal malpractice action where the attorney's failure of performance "is so clear that a trier of fact may find professional negligence unassisted by expert testimony" or, stated another way, where the attorney's negligence "is readily apparent from the facts of the case."

**TRIAL BRIEF**                                           10

1  Goebel v. Lauderdale (1989) 214 Cal 3d 1502, 1508; 263 CR 275,
2  278; Stanley v. Richmond (1995) 35 Cal 4th 1070, 1093.
3      Testimony from a bankruptcy specialist was not required to
4  establish Attorney's negligence in handling Client's bankruptcy
5  case where Attorney, purporting to be a bankruptcy specialist,
6  totally failed to perform "even the most perfunctory research"
7  and advised Client (a contractor) to break the law (by diverting
8  funds on a construction project intended for materials and labor—
9  a felony) Goebel v. Lauderdale, supra, 214 Cal 3d at 1508-1509;
10 Stanley v. Richmond, supra, 25 Cal 4th at 1093-1095, 41 CR 2d at
11 781-782—trier of fact could determine without expert testimony of
12 whether family law specialist was negligent in failing to perform
13 basic legal research in divorce proceed.
14     Expert testimony is not needed to prove what a lay person
15 could readily conclude from his or her common sense and general
16 knowledge—e.g. that a passenger firmly strapped in by a seatbelt
17 would not have been ejected from a car. Lara v. Nevitt, supra,
18 123 Cal 4th at 458-461.
19     In Lara, Plaintiff, riding in a truck's sleeper berth,
20 testified the berth's safety belt was uncomfortable because it
21 did not permit movement.  From this the jury properly concluded,
22 *without expert testimony,* that use of the belt would have
23 substantially decreased plaintiff's injury, and assigned
24 plaintiff 50% comparative negligence for failure to use the
25 belt…even though California law did not require the use of a
26 safety belt in a sleeper berth. Lara v. Nevitt, supra, 123 Cal 4th
27 at 460-461.
28

**TRIAL BRIEF**                                11

Here, as in <u>Lara</u>, the jury may properly conclude from its common knowledge, that DAVIS' failure to perform his contractual obligation to CARSON caused CARSON's damages.

Dated on May 15, 2009 in Fresno, California.

/S/ Thornton Davidson
THORNTON DAVIDSON
Attorney for Defendant/Cross Complainant, ROBERT CARSON

**TRIAL BRIEF**  12