**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **NAOKO ITO et al.,** ) | **NO. 1:06-CV-01135 AWI-DLB** |
| ) | |
| **Plaintiff**s, ) | **REVISED PRETRIAL ORDER** |
| **v.** ) | |
| ) | **TRIAL CONFIRMATION** |
| **BRIGHTON/SHAW, INC., et al.,** ) | **Date: October 13, 2009** |
| ) | **Time: 2:00 p.m.** |
| **Defendants.** ) | **Venue: Courtroom 2** |
| _____ ) | |
| and related cross-claims. | **Trial Date: October 27, 2009** |
| | **Time:  8:30 a.m.** |
| | **Venue: Courtroom 2** |
| | **RULES OF CONDUCT** |

This action is proceeding to trial between Cross-Complainant Robert Carson ("Carson")
and Cross-Defendant Craig Davis ("Davis") on the following issues:  Carson's cross-claims for
attorney malpractice and breach of contract against Davis and Davis's cross-claim for fraud
against Carson.

The pretrial conference was held on January 15, 2009.  On May 11, 2009, a motions in
limine hearing was held.  On May 13, 2009, Davis filed a trial brief.  On May 15, 2009, Carson
filed a trial brief.

Pursuant to the parties' stipulation, the original trial date of June 2, 2009 was vacated.  A
trial setting conference was held on May 27, 2009.  The trial in this matter was reset for October
27, 2009, at 8:30 a.m.  The parties currently estimate that the trial shall take 5 days.  Trial

confirmation is set for October 13, 2009, at 2:00 p.m.

I.    Jurisdiction and Venue

       The court had original jurisdiction pursuant to 28 U.S.C. §1332 (a)(2), in that complete diversity existed between Plaintiffs and Defendants.  The court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 with respect to the cross-complaints that were filed, which are the only remaining claims to be litigated.  Venue in this court is proper pursuant to 28 U.S.C. §1391(a) in that both parties' claims for relief arose from events and/or omissions that occurred in Fresno County, California.

II.   Jury Trial

       Carson and Davis have requested a jury trial.

III.  Facts

       A.  Undisputed Facts

1.     Cross-Defendant Davis is an attorney duly licensed to practice law in California.

2.     Defendant Brighton Hills Limited Partnership ("Brighton Hills") is a California limited partnership owning certain property in the County of Fresno, California.

3.     Shaw Academy Associates ("Shaw Academy") is a California limited partnership owning certain property in the County of Fresno, California.

4.     Fumitoshi Ito ("Ito") and Shizuo Miyoshi ("Miyoshi") transferred two million dollars ($2,000,000) to Carson on December 23, 1995.

5.     In return for the $2,000,000, Ito and Miyoshi were to receive a 100% interest in the IQ-Properties, an investment vehicle to purchase twelve units in Brighton Hills.

6.     Prior to May, 2002, Carson was General Partner of both Brighton Hills and Shaw Academy with certain rights, privileges and obligations as set forth in the Limited Partnership Agreements.

7.     On or about 2001, Carson retained Davis to assist him with a dispute which had arisen

between Carson and the limited partners in Brighton Hills and Shaw Academy.

8.      Davis agreed to represent Carson in the partnership dispute.

9.      Davis was advised at the time of the transfer of the units from IQ Properties that there were no documents confirming John Quiring's ("Quiring") authority to transfer the twelve (12) units.  Davis was advised that such authority existed.

10.     Carson executed a Mutual Release, Assignment & Indemnity Agreement with the partnerships of Brighton Hills and Shaw Academy.  During the same period, Brighton Hills consented to the transfer of 12 units to Carson and Davis.

11.     On March 21, 2002, Quiring assigned 12 units of Brighton Hills in possession of IQ Properties to Carson personally.  Quiring approved and executed the assignment on behalf of IQ Properties and Carson approved and executed the assignment on behalf of Brighton Hills.

12.     On March 25, 2002, Carson assigned seven (7) of the 12 units of Brighton Hills purportedly in his possession, later revised to five (5) units, to Craig and Cindy Davis

13.     On June 3, 2008, the Court found Carson liable for conversion.

        B.  Disputed Facts

1.      Whether Carson knew that Quiring did not have authority to transfer the 12 units in March of 2002.

2.      Whether Davis knew that Quiring did not have authority to transfer the 12 units in March of 2002.

3.      Whether Davis exercised due diligence with respect to the transfer of the 12 units.

4.      Whether Carson prevented Davis from investigating Quiring's authority to transfer the units.

5.      What efforts were made by Davis to investigate Quiring's authority.

6.      Whether Carson took the lead in negotiating the transfer of the 12 units with John Quiring.

7.      Whether Davis promised Carson legal services for an indefinite period of time.

3

8.      Whether Davis was obligated to retain counsel for Carson with respect to the 12 units.

9.      Whether Davis was obligated to represent Carson with respect to the 12 units.

10.     Whether Carson willfully agreed to and executed the Mutual Release, Assignment & Indemnity Agreement.

11.     Whether the April 3, 2002 constituted a contract between the parties.

12.     Whether the April 3, 2002 is unenforceable because of the statute of frauds.

13.     Whether the April 3, 2002 letter, if deemed a contract, failed because of a lack of consideration.

14.     Whether Davis partially performed the April 3, 2002 letter by retaining Attorney James Betts.

15.     Whether Carson has been damaged as a result of Davis' actions.

16.     Whether Davis has been damaged as a result of Carson's actions.

17.     Whether Carson intentionally misrepresented Quiring's authority regarding the 12 units to Davis.

18.     Whether Carson negligently misrepresented Quiring's authority regarding the 12 units to Davis.

19.     Whether Carson's rights as general partner included rights to monetary amounts and partnership shares upon his removal as General Partner.

20.     Whether Davis was aware of any writing reflecting that Ito and Miyoshi had forfeited any rights.

21.     Whether the assignment of partnership units to Carson was from IQ Properties International.

22.     Whether Davis draft the legal documents transferring or assigning the partnership units.

23.     That Carson claims that he was unaware of Plaintiffs' claims to the 12 partnership units.

24.     That Carson never told Davis that Plaintiffs had any claim of ownership to the 12 partnership units.

25. Whether Carson misrepresented to Davis that he possessed an ownership interest in the units.

26. Whether Carson and Quiring misrepresented to Davis that IQ Properties possessed an ownership interest in the units.

27. Whether Carson and Quiring misrepresented to Davis that Quiring possessed the authority to transfer the units.

28. Whether Carson misrepresented to Davis that Ito and Miyoshi had disclaimed their ownership interests in the units.

29. Whether Carson misrepresented facts to Davis in order to induce reliance.

30. Whether Carson knew that his representations to Davis were false or misleading.

31. Whether Davis detrimentally relied upon Carson's misrepresentations.

32. Whether Carson sought legal assistance from Davis regarding 12 units of Brighton Hills which were held by IQ Properties, a California Limited Partnership.

33. That Carson contended that he was entitled to the 12 units based on work he had performed for Ito and Miyoshi.

34. Whether on April 3, 2002, Davis drafted a letter disclosing the terms of the transaction.

35. Whether, on April 24, 2002, the parties entered into a Disclosure of Conflict of Interest with respect to the 12 units.

36. Whether, in August of 2006, Plaintiffs, who were heirs of Ito and Miyoshi, undertook certain actions and initiated legal proceedings against Carson and Davis with respect to the 12 units.

37. Whether, on January 24, 2008, Davis disclaimed any interest to the units.

38. Whether Carson retained Davis to represent Carson in the transfer of the shares.

IV.  Disputed Evidentiary Issues

    A.  Carson Anticipates The Following Evidentiary Disputes Which Should Be Resolved By Motion In Limine.

5

1. The admissibility of the April 3, 2002 letter.

      B.    <u>Davis Anticipates The Following Evidentiary Disputes Which Should Be Resolved By Motion In Limine.</u>

1. Exclude the April 3, 2002 letter.

2. Whether expert testimony is necessary to establish Davis's alleged breach of the standard of care.

3. Whether Carson is estopped from pursuing the instant claim based on the doctrine of unclean hands.

4. Exclude mention of size of McCormick Barstow LLP and/or the number of attorneys and law firms that have been involved in representing Davis in this case.

5. Exclude non-party witnesses from the courtroom before they testify and are excused as witnesses.

6. Exclude mention of the relative wealth of the parties.

7. Exclude all evidence, documents, or witnesses not disclosed by Carson in discovery.

8. Exclude/preclude Carson from arguing or introducing evidence of any settlement negotiations in this matter between Davis, on the one hand, and Carson, on the other.

9. Exclude/preclude Carson or any other party from arguing or introducing evidence of any insurance.

10. Exclude/preclude Carson from introducing any expert testimony on the standard of care.

11. Exclude Attorney James Betts from testifying as a witness in this matter.

V.    <u>Special Factual Information</u>

      The special factual information required by Local Rule 16-218(6) is specified above, where appropriate, in either the undisputed facts or disputed factual issues sections. Additional factual information is provided below in connection with the parties' respective sections concerning Points of Law.

VI.    Relief Sought:

     A.    Carson Seeks:

1.    That judgment be entered in favor of Carson and against Davis, for compensatory damages according to proof;

2.    For an award of punitive damages against Davis in an amount sufficient to make an example of and punish Davis;

3.    For an award of attorney's fees and costs incurred in prosecuting this action; and

4.    For such other and further relief as the court deems just and proper.

     B.    Davis Seeks:

     (a)    On the Cross-Complaint by Davis against Carson:

1.    That judgment be entered in favor of Davis and against Carson, for compensatory damages according to proof;

2.    For prejudgment interest in said sum;

3.    For an award of punitive damages against Carson in an amount according to proof;

4.    For such other and further relief as the Court deems just and proper.

     (b)    On the Cross-Complaint by Carson against Davis for Breach of Contract and

            Legal Malpractice.

1.    Davis seek a judgment in his favor and against Carson.

VII.    Points of Law

     A.    Carson's Points of Law.

     Every written agreement entered into within the State of California contain is an implied covenant of good faith and fair dealing, pursuant to which the parties agreed not to undertake any acts which will deprive the other party to the privileges and benefit intended by their agreement.

     Davis, as attorney for Carson, owed Carson fiduciary duties to act with the utmost good faith in the best interests of Carson, of loyalty, by placing Carson's interests ahead of his own. On the issue of Carson's failure to designate an expert witness, Carson need not have an expert to

7

prevail in this action. Consistent with Davis' contention that only the more egregious cases of malpractice, <u>Day v. Rosenthal</u> (1985) 170 Cal. App.3d 1125, provides that conduct which breaches ethical duties set forth in California Rules of Professional Conduct not only does not require expert testimony; an expert's testimony would be disregarded where the Rules control. The pleadings have established that Davis violated numerous State Bar Rules in his dealings with Carson.

      B.     <u>Davis's Points of Law</u>

      1.     Davis Contends That Carson's Claims Are Barred By The Doctrine Of Unclean Hands.

Davis asserts that Carson's claims against him are barred by the doctrine of unclean hands in that it is the result of Carson's own wrongful actions that the instant matter was initiated. The defense of unclean hands arises from the equitable maxim that "he who comes into equity must come with clean hands." <u>Blain v. Doctor's Co.</u>, 222 Cal. App. 3d 1048, 1059 (1990). While this equitable doctrine is "a vehicle for affirmatively enforcing the requirements of conscience and good faith", the defense cannot transform a matter into one based entirely on the morals of the respective parties. <u>Precision Co. v. Automotive Co.</u>, 324 U.S. 806, 814 (1945); <u>Fibreboard Paper Products Corp. v. East Bay Union of Machinists</u>, 227 Cal. App. 2d 675, 729 (1964).) As a result, "the issue is not that the plaintiff's hands are dirty, but rather that the manner of dirtying renders inequitable the assertion of such rights against the defendant." <u>Mattco Forge v. Arthur Young & Co.</u>, 52 Cal. App. 4th 820, 846 (1997), citing, <u>Martin v. Kehl</u>, 145 Cal. App. 3d 228, 239-240, fn. 1 (1983).

Admittedly, "the misconduct which brings the clean hands doctrine into operation must relate directly to the transaction concerning which the complaint is made, i.e., it must pertain to the very subject matter involved and affect the equitable relations between the litigants." <u>Id.</u>, citing <u>Fibreboard Paper Products Corp.</u> supra, 227 Cal. App. 2d at 728; <u>Vacco Industries, Inc. v. Van Den Berg</u>, 5 Cal. App. 4th 34, 52 (1992). Thus, there must be a direct relationship between

the misconduct and the claimed injuries.  Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP, 133 Cal. App. 4th 658, 680-681 (2005), relying on Unilogic, Inc. v. Burroughs Corp., 10 Cal.App.4th 612, 621 (1992) [finding that plaintiff's orchestrated scheme to defraud investors and its subsequent liability for the same barred plaintiff's right to seek damages from its attorneys for its conduct arising out of the same transactions].  Significantly, "equity will grant relief when a plaintiff's conduct prejudicially affect[s] the rights of the person against whom the relief is sought so that it would be inequitable to grant such relief." Mattco Forge, supra, 52 Cal. App. 4th at 846, citing, Martin, supra, 145 Cal. App. 3d at 239-240, fn. 1.

Davis asserts that all of Carson's claims arise out of, or relate to, his forced resignation from the Brighton Hills Partnership or the transfer of the 12 units.  Nonetheless, Carson has been found liable for conversion with respect to the 12 units and admittedly misappropriated funds from the Brighton Hills partnership.  Therefore, Davis asserts that Carson's claims are barred by the doctrine of unclean hands.

　　　　2.　　　Legal Malpractice.

In order to assert an action for professional negligence "the plaintiff must establish that but for the alleged negligence of the defendant attorney, the plaintiff would have obtained a more favorable judgment or settlement in the action in which the malpractice allegedly occurred." Viner v. Sweet, 30 Cal.4th 1232, 1243 (2003) [holding that in a transactional malpractice action involving an attorney's performance in giving advice or preparing documents for a business transaction, clients were required to show that, but for the alleged malpractice, it was more likely than not that the clients would have obtained a more favorable result in the transaction].  This standard applies irrespective of whether the alleged negligence arose out of litigation or transactional services.  (Ibid.)  It is not enough merely to allege that an attorney's conduct caused a possibility of harm.  (Marshak v. Ballesteros, 72 Cal.App.4th 1514, 1518-1519 (1999) ["the probability that a certain event would have happened, upon which a claim for damages is predicated, will not support the claim or furnish the foundation of an action for such damages";

see also, (Thompson v. Halvonick, 36 Cal.App.4th 657, 663 (1995).)  Rather, the plaintiff must demonstrate that as a result of the attorney's negligence, he suffered actual damages, i.e. a loss in value from what was actually received and what could have been received.  (Loube v. Loube, 64 Cal.App.4th 421, 425 (1998); (Budd v. Nixon, 6 Cal.3d 195, 200 (1971) [finding that a plaintiff must establish actual loss or damages resulting from the professional's negligence]; Alhino v. Starr (1980) 112 Cal.App.3d 158, 176.).)  In fact, it is typically the plaintiff's burden to prove by a preponderance of the evidence both that the attorney was negligent and that the plaintiff would have obtained a better result in the underlying case if the attorney had conformed to the standard of practice.  (Bud, supra, 6 Cal.3d at 200; See also, Lysick v. Walcom, 258 Cal.App.2d 136, 153 (1968).)

       a.      An Expert Is Necessary To Establish That Davis Fell Below The Standard Of Care.

Davis asserts that Carson cannot prove his claim for legal malpractice because he cannot establish that Davis fell below the standard of care.  In proving that a professional fell below the standard of care, expert testimony is necessary to establish that the attorney fell below the standard of care because such knowledge does not rest with layperson.  (Day v. Rosenthal, 170 Cal. App. 3d 1125, 1147 (1985).)  Only in egregious situations where common sense dictates that a breach occurred is expert testimony not necessary.  (Id. at 1146.)  Only in egregious situations where common sense dictates that a breach occurred is expert testimony not necessary.  (Ibid.)

The question as to whether Davis properly exercised "due diligence" is a question that requires expert testimony; testimony that Carson cannot provide because he did not designate an expert.  (McCleery v. City of Bakersfield, 170 Cal. App. 3d 1059, 1076 (1985).)  However, Carson failed to designate an expert, thereby demonstrating that he cannot prove that Davis fell below the standard of care.  Moreover, Davis asserts that his diligence conformed to the standard of care in that Carson limited his representation with respect to the dealings with John Quiring and prevented him from investigating further.  (Cal. Professional Conduct Rule 3-400.)

Therefore, and based on the above Davis contends that Carson cannot prove that his performance fell below the standard of care.

b.  Carson Cannot Prove Damages.

Again, in order to prove a claim for legal malpractice, a party must prove he suffered actual damages, i.e. a loss in value from what was actually received and what could have been received. (Loube, supra, 64 Cal.App.4th at 425.)  Here, Davis contends that Carson cannot prove damages.  Specifically, Davis asserts that as a result of Carson's own actions, Plaintiffs filed the instant lawsuit.  As a result, Carson cannot prove that "but for" Davis' alleged actions or inactions, he would not have been damaged.

3.  Breach of Contract.

a.  The Alleged Contract Is Barred By The Statute Of Frauds.

An agreement that by its terms is not to be performed within a year from the making thereof comes within the statute. (C.C. § 1624(a) (1); see McKeany v. Black, 117 C. 587, 591, 49 P. 710 (1897); Foley v. Interactive Data Corp., 47 C.3d 654, 673 (1988).)  The Court has consistently held that a contract is invalid under the statute of frauds "when it is evident from the subject matter of the contract that the parties had in contemplation a longer period than one year as the time for its performance." (Tostevin v. Douglas, 160 Cal App 2d 321, 327 (1958), relying on Long v. Cramer Meat & Packing Company, 155 Cal. 402; Edgar Bros. Co. v. Schmeiser Mfg. Co., 33 Cal.App. 667.)  So long as it is evident that the parties intended the agreement to continue longer than a year, then applicable authority mandates that the agreement must be in writing.  (Miller v. Indasco, Inc., 223 Cal. Rptr. 551, 553 (1986).)

Importantly, California Civil Code section 1624 provides in relevant part:

(3)  There is sufficient evidence that a contract has been made in any of the following circumstances:

(D)  There is a note, memorandum, or other writing sufficient to indicate that a contract has been made, signed by the party against whom enforcement is sought [emphasis added].

11

Based on the above, a writing purportedly setting forth the parties' agreement will be insufficient unless it is signed by the party that is being charged with the writing.  (Ibid.; 1 Witkin Sum. Cal. Law Contracts (10th Ed. 2006) § 359.)

Davis contends that Carson's entire claim is based upon a letter that was never signed, and which Carson knew did not reflect the parties' understanding.  Consequently and pursuant to California Civil Code section 1624 and related authority, the statute of frauds bars the enforcement of this "contract" because it was not signed by Davis.

b.      The Contract Fails For A Lack Of Consideration.

While there is no doubt that bilateral promises may serve as sufficient consideration, those promises must be legally binding in order for them to be deemed adequate consideration.  (Bleecher v. Conte, 29 Cal. 3d 345, 350 (1981).)  Where no obligation is assumed, then the promise is considered illusory and the contract is unenforceable.  (1 Witkin, Summary 10th (2005) Contracts, § 225, pg. 260.)  "For the contract to bind either party, both must have assumed some legal obligations. Without this mutuality of obligation, the agreement lacks consideration and no enforceable contract has been created."  (Bleecher, supra, 29 Cal.3d at 350.)

Moreover, "if one of the promises leaves a party free to perform or to withdraw from the agreement at his own unrestricted pleasure, the promise is deemed illusory and it provides no consideration."  (Mattei v. Hopper, 51 Cal. 2d 119, 122 (1958).)  This is because an illusory promise is interpreted to mean words stated in a promissory fashion that, in affect, promise nothing.  (2 Corbin, Contracts (rev. ed. 1995) § 5.28, p. 142.)  While it is true that an implied obligation to use good faith is enough to avoid the finding of an illusory promise, such a finding is contingent upon a finding that the promisor was acting in good faith.  (Third Story Music v. Waits, 41 Cal. App. 4th 798, 806 (1995).)  If the purported promise is found to have been an empty promise that the party did not intend on performing, then the promise is illusory.  (See generally, Ibid.; 2 Corbin, at § 5.28, p. 142.)

Here, Carson alleges that in exchange for Davis' promise to provide legal services indefinitely, he assigned Davis 5 units.  However, at the time that Carson promised Davis the 5

units, he knew that he did not have authority to assign the units. Therefore, Davis assets that Carson's promise was illusory, thereby rendering the alleged contract unenforceable.

In the very least, Davis contends that he is entitled to rescind the purported contract because the consideration failed. A party may rescind an agreement or instrument either where the consideration for its obligations fail in whole or in part through the fault of the other party or where there is a failure of consideration in a material respect for any cause. (Civ. Code §§ 1689(b) (2) & (4).) A failure of consideration is material when it frustrates the purpose of the contract, and is immaterial only if it is of minor importance and can readily be compensated for by damages. (<u>Fountain v. Semi-Tropic L. & W. Co.</u>, 93 Cal. 677, 680-81 (1893); <u>Crofoot Lumber, Inc. v. Thompson</u>, 163 Cal.App.2d 324, 332-33 (1958).) A willful default may be a material failure even though no economic loss ensues. (<u>Coleman v. Mora</u>, 263 Cal.App.2d 137, 150 (1968); <u>Wilson v. Corrugated Kraft Containers</u>, 117 Cal.App.2d 691, 697 (1953).)

Here, there is no doubt that Carson has been found liable for conversion, meaning that he knew at the time he "transferred' the units to Davis, he had no authority to do so. As such, the purported consideration failed, thereby entitling Davis to rescind the alleged contract.

VIII.   <u>Abandoned Issues</u>

The parties indicate: (1) Carson's Second Cause of Action for Breach of Fiduciary Duty against Davis was stricken by the Court's August 7, 2008, Order Denying in Part and Granting in Part Cross-Defendant Davis' Motion for Summary Judgment; (2) Davis's Cross-Complaint is moot as to any claims against Quiring or the partnership, including the second and third causes of action in their entirety; and (3) Davis's claim for declaratory relief pursuant to the January 16, 2009 Pre-Trial Order paragraph VIII.

IX.   <u>Witnesses</u>

_____The following is a list of witnesses that the parties expect to call at trial, including rebuttal and impeachment witnesses. NO WITNESS, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE CALLED AT TRIAL UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST

INJUSTICE." Fed. R. Civ. P. 16(e); Local Rule 16-281(b)(10).

1. Rob Carson

2. Craig Davis

3. Jim Betts

4. Partnership Representatives

5. Thornton Davidson (as to Attorney's Fees)

6. John Quiring

7. Karen Howe

8. Jeff Boswell.

X. Exhibits

_____The following is a list of documents or other exhibits that the parties expect to offer at trial. NO EXHIBIT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE." Fed. R. Civ. P. 16(e); Local Rule 16-281(b)(11).

1. April 3, 2002, letter to Partnership stating that Davis would perform legal services for Carson for "an indefinite period at no charge" relative to claims against the aforesaid 12 units in Brighton Hills.

2. Disclosure of Conflict of Interest dated April 24, 2002.

3. Mutual Release, Assignment & Indemnity Agreement.

4. Transfer documents relating to the partnership units.

5. Correspondence from Carson to Ito/Miyoshi relating to Brighton Hills and/or Shaw Academy.

6. Correspondence with Brighton Hills regarding transfer of partnership units.

XI. Discovery Documents To Be Used at Trial (Answers to Interrogatories and Responses to Requests for Admissions)

A. Discovery that Davis May Use at Trial

14

1.     Carson's written responses to Requests for Admission (Set one) from Davis.

2.     Carson's written responses to special interrogatories.

XII.   Further Discovery or Motions

The parties agree that there are no further discovery or discovery motions to be heard.

XIII.  Stipulations

None.

XIV.   Amendments/Dismissals

None other than those claims already resolved by the court.

XV.    Settlement Negotiations

There have been no substantial settlement negotiations between the parties. Carson does not believe it would be beneficial to undertake any settlement negotiations at this point.

XVI.   Agreed Statements

None.

XVII.  Separate Trial of Issues

None.

XVIII. Impartial Experts-Limitation of Experts

None.

XIX.   Attorneys' Fees

Carson seeks an award of attorneys' fees, which would be awarded pursuant to his damages if Carson prevails.

XX.    Claims of Privilege

None.

XXI.   Further Trial Preparation

       A.  Final Witness List

The parties are ordered to file and serve their final list of witnesses by 12:00 p.m. (Noon) on October 22, 2009.  Additionally, at that time Plaintiff shall disclose the order of witnesses so that Defendant will be prepared for cross-examination.

Except upon the showing set forth above in Section IX, a party may not add witnesses to the final list of witnesses, or to any other updated witness list, who are not disclosed in this Order in Section IX.

B.  Trial Briefs

The parties filed and served trial briefs on May 13, 2009 and May 15, 2009 pursuant to Local Rule 16-285.  A response to a trial brief may be filed by 4:00 p.m. on October 22, 2009.

C.  Duty of Counsel to Pre-Mark Exhibits

The parties are ordered to confer for purposes of pre-marking and examining each other's exhibits.  All joint exhibits must be pre-marked with numbers preceded by the designation JT/-- (e.g., JT/1, JT/2).  All of Plaintiffs' exhibits shall be pre-marked with numbers.  All of Defendants' exhibits shall be pre-marked with letters.

1.  Counsel shall create four (4) complete, legible sets of exhibits in binders as follows:

(a)      Two sets of binders to be delivered to Courtroom Clerk Harold Nazaroff by 12:00 p.m. (Noon) on October 22, 2009, one for use by the Courtroom Clerk and the other for the court; and

(b)      One set for each counsel's own use.

If the parties desire, they may have a fifth set of binders to be used for the purposes of questioning witnesses.

2.  Counsel are to confer and make the following determination with respect to each proposed exhibit to be introduced into evidence, and to prepare separate indexes - one listing joint exhibits, and one listing each party's separate exhibits:

(a)  Duplicate exhibits, i.e., documents which both sides desire to introduce into evidence, shall be marked as a joint exhibit, and numbered as directed above.  Joint exhibits shall be listed on a separate index, and shall be admitted into evidence on the motion of any party, without further foundation.

(b)  As to exhibits that are not jointly offered, and to which there is no objection to introduction, those exhibits will likewise be appropriately marked, e.g., Plaintiffs' Exhibit 1 or

16

Defendants' Exhibit A, and shall be listed in the offering party's index in a column entitled "Admitted In Evidence."  Such exhibits will be admitted upon introduction and motion of the party, without further foundation.

(c)  Those exhibits to which the only objection is a lack of foundation shall be marked appropriately, e.g., Plaintiffs' Exhibit 2 - For Identification, or Defendants' Exhibit B - For Identification, and indexed in a column entitled "Objection Foundation."

(d) Remaining exhibits as to which there are objections to admissibility not solely based on a lack of foundation shall likewise be marked appropriately, e.g., Plaintiffs' Exhibit 3 - For Identification or Defendants' Exhibit C - For Identification, and indexed in a third column entitled "Other Objection" on the offering party's index.

3.  Each separate index shall consist of the exhibit number or letter, a brief description of the exhibit, and the three columns outlined above, as demonstrated in the example below:

INDEX OF EXHIBITS

|  |  | ADMITTED | OBJECTION | OTHER |
|  | EXHIBIT #  DESCRIPTION | IN EVIDENCE | FOUNDATION | OBJECTION |

Two sets of the completed joint index and the separate indexes shall be delivered to the Courtroom Clerk with the two sets of binders by 12:00 p.m. (Noon) on October 22, 2009.

The court has no objection to counsel using copies.  However, the copies must be legible. If any document is offered into evidence that is partially illegible, the court may *sua sponte* exclude it from evidence.

D.  Discovery Documents

By 12:00 p.m. (Noon) on October 22, 2009, each party shall file a list of all discovery documents the party intends to use at trial.  The list shall indicate whether each discovery document has previously been lodged with the Clerk.  If the discovery document has not been previously lodged, the party shall so lodge the document with the Courtroom Clerk by October 22, 2009.

E.  Motions In Limine Hearing and Briefing Schedule

17

The hearing for motions in limine, including cross-motions in limine regarding the need for expert testimony, was held on May 11, 2009.

### F.  Morning Conferences During Trial

During the trial, it is the obligation of counsel to meet with the court each morning to advise the court and opposing counsel as to what documents are proposed to be put into evidence that have not previously been admitted by stipulation, court order, or otherwise ruled upon.  The court will rule on those documents, to the extent possible, prior to the commencement of trial each day out of the presence of the jury.  If the ruling depends upon the receipt of testimony, the court will rule as requested upon the receipt of such testimony.

The court shall consider any other legal matter at morning conferences as well.  The court does not wish to recess the trial to hear legal argument outside of the presence of the jury, and proper preparation by counsel will eliminate the need for that result.

### G.  Order Of Witnesses

To make the trial operate efficiently and smoothly, each counsel has the continuing obligation to advise opposing counsel as to what witnesses he or she intends to call twenty-four (24) hours prior to calling that witness.

### H.  Voir Dire

The parties shall file proposed voir dire questions, if any, by 12:00 p.m. (Noon) October 22, 2009.

Additionally, in order to aid the court in the proper voir dire examination of the prospective jurors, counsel are directed to lodge with the court on the first morning of trial a list of the prospective witnesses they expect to call, omitting any witness listed in this Pre-Trial Order whom the party no longer intend to call.  This list shall contain the names of the each witness, and the business and/or home address of each witness.

### I.  Proposed Jury Instructions

The parties shall file proposed jury instructions by 12:00 p.m. (Noon) on October 22,

2009, and email a copy of the proposed instructions formatted for **WordPerfect 10** to Courtroom Clerk Harold Nazaroff.

All proposed jury instructions shall be in duplicate. One set shall indicate the party proposing the instruction, with each instruction numbered or lettered, shall cite supporting authority, and shall include the customary "Given, Given as Modified, or Refused," showing the court's action with regard to each instruction. The other set shall be an exact copy of the first set, but shall be a "clean" copy that does not contain the identification of the offering party, supporting authority, or reference to the court's disposition of the proposed instruction.

_____The parties are ordered to confer immediately after the trial confirmation hearing to determine which instructions they agree should be given. As soon as possible thereafter, the parties shall submit a list of joint, unopposed instructions. As to those instructions to which the parties dispute, the court will conduct its jury instruction conference during trial at a convenient time.

_____ J. Proposed Verdict Form

Each party shall file a proposed verdict form by 12:00 p.m. (Noon) on October 22, 2009.

_____ K. Use Of Videotapes

_____Any party wishing to use a videotape for any purpose during trial shall lodge a copy of the videotape with the Courtroom Clerk by October 22, 2009. If a written transcript of audible words on the tape is available, the court requests that the transcript be lodged with the court, solely for the aid of the court.

_____ L. Use of Videotapes

_____If counsel intends to use a laptop computer for presentation of evidence, they shall contact the courtroom deputy clerk at least one week prior to trial. The courtroom deputy clerk will then arrange a time for counsel to bring the laptop to the courtroom, and meet with a representative of the Information and Technology Department and receive a brief training session on how counsel's equipment interacts with the court's audio/visual equipment. If counsel intends to use PowerPoint, the resolution should be set no higher than 1024 x 768 when

19

1 preparing the presentation.

2      M.  Agreed Summary Of The Case

3      The parties shall lodge with the Courtroom Clerk a joint agreed summary of the case,

4 briefly outlining the positions of the parties by 12:00 p.m. (Noon) on October 22, 2009.  The

5 summary will be read to the jury panel at the outset of the trial solely for the purposes of assisting

6 in the jury selection process.  The contents of the summary shall not be deemed to be evidence or

7 an admission or stipulation by a party as to any contested fact or issue.

8 XXI.   Objections to Pretrial Order

9      Any party may, within ten (10) calendar days after the date of service of this order, file

10 and serve written objections to any of the provisions of this order.  Local Rule 16-283.  Such

11 objection shall specify the requested corrections, additions or deletions.

XXIII. Rules of Conduct During Trial

    A. <u>General Rules</u>

    1. All participants in the trial shall conduct themselves in a civil manner. There shall be no hostile interchanges between any of the participants.

    2. All oral presentations shall be made from the podium, unless otherwise permitted by the court.

    3. Sidebar conferences are discouraged. Legal arguments or discussion of issues outside the presence of the jury should be done during recesses.

    4. Counsel shall advise their respective clients and witnesses not to discuss any aspect of the case in the common areas of the courthouse accessible to the jurors, such as the lobby, the elevators, the hallways and the cafeteria.

    B. Jury Selection

    _____1. The court will conduct voir dire to be supplemented by any written questions submitted by counsel prior to trial and after the court has concluded its questioning of the jury panel. In some circumstances, the court may allow brief direct questioning by counsel.

    C. Opening Statements

    _____1. Counsel may use visual aids in presenting the opening statement. However, any proposed visual aids shall be shown to opposing counsel before opening statement.

    D. Case in Chief

    _____1. Counsel shall have his/her witnesses readily available to testify so that there are no delays in the presentation of evidence to the trier of fact.

    2. At the close of each trial day, counsel shall disclose his/her anticipated witnesses and order of presentation for the next day, so that any scheduling or evidentiary issues may be raised at that time.

    E. Witnesses

    _____1. Before approaching a witness, counsel shall secure leave of court to approach the witness.

2. Before approaching a witness with a writing, counsel shall first show the writing to opposing counsel.

F. Exhibits

1. All exhibits shall be marked and identified in accordance with the instructions in the Pretrial Order.

2. An exhibit shall not be published to the jury until it has been admitted into evidence and counsel has secured leave of court to publish the exhibit.

3. The court usually will conduct an on the record review of the exhibits that have been admitted in evidence at the conclusion of each party's case in chief and after each party has rested its entire case.

G. Objections

1. No speaking objections or arguments are permitted in the presence of the jury. Counsel shall state the specific legal ground(s) for the objection, and the court will rule based upon the ground(s) stated. The court will permit counsel to argue the matter at the next recess.

2. The court will not assume that any objection made also implies with it a motion to strike an answer that has been given. Therefore, counsel who has made an objection, and who also wishes to have an answer stricken, shall also specifically move to strike the answer.

H. Closing Argument

1. Counsel may use visual aids in presenting the closing argument. However, any proposed visual aids shall be shown to opposing counsel before closing argument.

FAILURE TO COMPLY WITH ALL PROVISIONS OF THIS ORDER MAY BE GROUNDS FOR THE IMPOSITION OF SANCTIONS, INCLUDING POSSIBLE DISMISSAL OF THIS ACTION OR ENTRY OF DEFAULT, ON ANY AND ALL COUNSEL AS WELL AS ON ANY PARTY WHO CAUSES NON-COMPLIANCE WITH THIS ORDER.

/ / /

1  IT IS SO ORDERED.

2  **Dated:**    **May 27, 2009**                         **/s/ Anthony W. Ishii**
                                           CHIEF UNITED STATES DISTRICT JUDGE